FRIEDA A. FOREST McREYNOLDS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McReynolds v. Commissioner
Docket No. 9874-89
United States Tax Court
T.C. Memo 1991-210; 1991 Tax Ct. Memo LEXIS 234; 61 T.C.M. (CCH) 2603; T.C.M. (RIA) 91210; May 14, 1991, Filed *234 Decision will be entered under Rule 155. Richard D. Silvester, for the petitioner. Kathryn Vetter, for the respondent. FAY, Judge. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in Federal income tax in the amount of $ 100,006 for taxable year 1985. Respondent also determined additions to tax in the amount of $ 5,000 for negligence pursuant to section 6653(a)(1), [1] in the amount of $ 23,785 for a substantial understatement pursuant to section 6661, and in the amount of 50% of the interest due on the deficiency pursuant to section 6653(a)(2). After concessions, the issues remaining for discussion are: 1) Whether respondent's determination as to the deficiency and additions is correct; and 2) whether petitioner qualifies as an innocent spouse pursuant to section 6013(e). FINDING OF *235 FACTS Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by reference. Frieda A. Forest McReynolds (petitioner) resided in Pleasant Hill, California, when the petition in this case was filed. During 1985 petitioner was married to Charles W. Forest (Charles). Petitioner and Charles were married from 1956 until 1987. They were separated on July 4, 1986 and received a final divorce decree in June 1987. In 1985 Charles was a licensed securities broker selling real estate limited partnership packages at wholesale to other brokers. Charles also operated a mail order pocketknife sharpener business. Charles reported income and expenses for each of these two businesses on a separate Schedule C. Petitioner reported income and expenses from her own real estate and securities sales business on a third Schedule C. Petitioner and Charles filed a joint Federal income tax return during the year at issue. Throughout their marriage Charles normally prepared the couple's tax return. Charles prepared the 1985 return shortly after being released from the Intensive Care Unit of a hospital and shortly after petitioner *236 informed him she wished to get a divorce. Many of the records needed for preparation of the return were missing. [2] Charles, using his 1984 return as a basis, estimated certain amounts on the 1985 return. Petitioner worked closely with Charles in his real estate limited partnership business before and during the year at issue. Her responsibilities generally included public relations, scheduling appointments, participating in the presentation of seminars, [3] training others to give seminars, and supervising the clerical staff. Petitioner arranged entertainment for clients. Petitioner also acted as liaison with the developer of the *237 partnership packages. Petitioner had no dealings with the financial aspect of the business. She did no bookkeeping nor did she have occasion to review the books and other financial records of the business. However, petitioner was paid a commission by Charles; therefore, her compensation depended upon the amount of money Charles made. Petitioner, during the year at issue, had a number of professional licenses including a real estate salesperson's license, a real estate broker's license, and Series 7 Securities License. All of these licenses required petitioner to pass an examination before she could be licensed. In order to obtain her real estate broker's license, petitioner was required to take 16 college credits in real estate. In order to pass the Series 7 license exam, petitioner needed to be able to read financial statements. Petitioner never questioned Charles about business, tax, or financial matters. Petitioner merely trusted Charles to deal with these matters *238 as he saw fit. Petitioner continued this pattern even after petitioner and Charles were separated. OPINION The first issue is whether respondent's determination as to the deficiency and additions is correct. Petitioner has not challenged the correctness of respondent's determination. Respondent concedes the correct deficiency and additions are reflected by the settlement reached with Charles in docket No. 16233-89. We hold petitioner is liable for the deficiency and additions as agreed to in docket No. 16233-89 unless the innocent spouse provisions apply. The second issue is the innocent spouse question. Pursuant to section 6013(d)(3), a husband and wife who file a joint return are jointly and severally liable for the tax due. Section 6013(e)(1) provides relief from liability if an "innocent spouse" proves: (1) A joint return was filed; (2) on such return there was a substantial understatement of tax; (3) the understatement exceeds a certain percentage of the preadjustment year income of the spouse seeking relief; (4) the substantial understatement of tax is attributable to grossly erroneous items of the other spouse; (5) the innocent spouse did not know and had no reason *239 to know of the substantial understatement when she signed the return; and (6) after a consideration of all the facts and circumstances it would be inequitable to hold her liable for the deficiency.[4]Estate of Simmons v. Commissioner, 94 T.C. 682, 683 (1990); Flynn v. Commissioner, 93 T.C. 355, 359 (1989); Purcell v. Commissioner, 86 T.C. 228, 234-235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Petitioner bears the burden of establishing that each of the requirements of section 6013(e) has been satisfied. Purcell v. Commissioner, 826 F.2d at 473; Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). The requirements of section 6013(e) are conjunctive; ergo, a failure to meet any of the requirements prevents a spouse from qualifying for relief, Bokum v. Commissioner, 94 T.C. 126 (1990). *240 The parties agree petitioner and Charles filed a joint return for 1985, and, if the understatement is found to be attributable to grossly erroneous items, section 6013(e)(4)[5] will not bar the application of section 6013(e) in the instant case. The adjustments made by respondent fall into several categories, each of which will be discussed separately. *241 The first category is the adjustments to petitioner's Schedule C and petitioner's self-employment taxes. A taxpayer cannot be an innocent spouse with respect to the taxpayer's own income or deductions. Hayes v. Commissioner, T.C. Memo 1989-327. We hold petitioner cannot escape liability for the deficiencies which related to her Schedule C and her self-employment tax. The second category is the adjustment to losses from partnerships which petitioner and Charles held jointly. Again petitioner cannot escape liability tax for the deficiencies which relate to an overstatement of the taxpayer's own losses. The third category is miscellaneous amounts of unreported ordinary income totalling $ 1,322 and unreported capital gain income equalling $ 209. Petitioner presented no evidence with regard to these items. Petitioner has the burden of proof. We hold petitioner is not entitled to innocent spouse relief for these amounts. The fourth category is miscellaneous itemized deductions. Again petitioner presented no evidence with regard to these amounts. We hold petitioner is not entitled to innocent spouse relief with regard to these amounts. The final category, *242 Charles's Schedule C deductions, is by far the largest category in terms of dollar amount. In fact, petitioner focused her entire case on these deductions. We hold, for the reasons discussed below, petitioner did not carry her burden and establish she had no reason to know of the understatement; therefore, petitioner is not entitled to innocent spouse relief. In doing so, we eliminate the need to discuss and decide the remaining elements of section 6013(e). The standard to be applied when determining whether an alleged innocent spouse has "reason to know" pursuant to section 6013(e)(1)(C) is whether "a reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Bokum v. Commissioner, supra at 148, quoting Stevens872 F.2d 1499 at 1507; Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), revg. T.C. Memo 1987-360; Stevens v. Commissioner, 872 F.2d 1499 (11th Cir. 1989). Generally, the Tax Court and several courts of appeals *243 have held the knowledge contemplated by section 6013(e) is knowledge of the transaction itself, not necessarily knowledge of the tax consequence of a transaction. Purcell v. Commissioner, 826 F.2d at 474; Quinn v. Commissioner, 62 T.C. 223 (1974), affd. 524 F.2d 617, 626 (7th Cir. 1975); Stevens v. Commissioner, supra.
However, the Court of Appeals for the Ninth Circuit, to which appeal lies in the instant case, has held the taxpayer must only show she had no reason to know the deduction would give rise to a substantial understatement. Price v. Commissioner, supra at 963. We are bound to follow the Ninth Circuit's opinion. Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Price outlines the following factors to be considered when deciding whether the alleged innocent spouse had "reason to know" of the substantial understatement: (1) The spouse's level of education; (2) the spouse's involvement in the family business and financial affairs; (3) the presence of expenditures that appear lavish or unusual; *244 and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. Price v. Commissioner, 887 F.2d at 963, citing Stevens v. Commissioner, 872 F.2d at 1505. In applying these factors we note, while petitioner had limited involvement in the financial affairs of her marriage with Charles, the limits were self-imposed. There is no evidence Charles sought to exclude petitioner from financial affairs generally, or taxes in particular. Petitioner simply chose not to get involved. We do not think petitioner's "ostrich imitation" was reasonable. See Clevenger v. Commissioner, 826 F.2d 1379 (4th Cir. 1987), affg. a Memorandum Opinion of this Court; Cohen v. Commissioner, T.C. Memo 1987-537. It is also important to note petitioner was perfectly capable of understanding the couple's finances and assisting in financial decision making. Petitioner is a sophisticated business woman. Both before and since the year at issue, petitioner has made substantial sums of money selling real estate. Petitioner also is licensed to sell securities. Part of the exam for the license to sell securities *245 requires that the candidate be able to read financial statements. Additionally, the tax concepts involved in business deductions are not complicated. Petitioner was extensively involved in Charles's real estate syndication business. It can be said petitioner was so "intimately" involved with the business she knew virtually all of the facts of the transaction leading to the deductions. Petitioner scheduled and attended almost all of the seminars. She even presented at least one seminar and she traveled with Charles on certain trips which gave rise to some disallowed deductions. Petitioner was the liaison between Charles's business and the home office. Petitioner and Charles worked as a team in running the real estate business. A large part of the contested deductions were for entertainment expenses. Petitioner arranged the entertainment for the clients. As the Ninth Circuit wrote in Price: if a spouse knows virtually all of the facts pertaining to the transaction which underlies the substantial understatement, her defense in essence is premised solely on ignorance of law. * * * In such a scenario, regardless of whether the spouse possesses knowledge of the tax consequences *246 of the item at issue, she is considered as a matter of law to have reason to know of the substantial understatement and thereby is effectively precluded from establishing to the contrary. * * *
Price v. Commissioner, supra at 964. See Stevens v. Commissioner, 872 F.2d at 1505 and n. 8; Quinn v. Commissioner, 62 T.C. 223, 231 (1974), affd. 524 F.2d 617 (7th Cir. 1975). Petitioner knew about Charles's illness. Petitioner knew he was very upset over the failure of his marriage. Petitioner knew Charles moved from his office in early 1986 upsetting his filing system. An ordinary prudent person in petitioner's position at the time of signing the return would have inquired as to the accuracy of the return. Accordingly, a Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The exact whereabouts of the records is not clear. Some may have been misplaced when Charles moved his files from his office to his home in early 1986. Petitioner and Charles were still together at the time of the move. Others may not have been properly handled by Charles's clerical staff. Some other records were in petitioner's possession and were used in preparing the return.↩
3. She occasionally gave seminars on her own.↩
4. Section 6013(e)↩ is gender neutral. We use she or her to refer to the alleged innocent spouse because that is the circumstance in our case.
5. (4) Understatement must exceed specified percentage of spouse's income. --
(A) Adjusted gross income of $ 20,000 or less. -- If the spouse's adjusted gross income for the preadjustment year is $ 20,000 or less, this subsection shall apply only if the liability described in paragraph (1) is greater than 10 percent of such adjusted gross income. (B) Adjusted gross income of more than $ 20,000. -- If the spouse's adjusted gross income for the preadjustment year is more than $ 20,000, subparagraph (A) shall be applied by substituting "25 percent" for "10 percent". (C) Preadjustment year. -- For purposes of this paragraph, the term "preadjustment year" means the most recent taxable year of the spouse ending before the date the deficiency notice is mailed. (D) Computation of spouse's adjusted gross income. -- If the spouse is married to another spouse at the close of the preadjustment year, the spouse's adjusted gross income shall include the income of the new spouse (whether or not they file a joint return). (E) Exception for omissions from gross income. -- This paragraph shall not apply to any liability attributable to the omission of an item from gross income.↩