JULIUS PAUL PRINCE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Prince v. Commissioner
Docket No. 23814-93
United States Tax Court
T.C. Memo 1995-368; 1995 Tax Ct. Memo LEXIS 369; 70 T.C.M. (CCH) 309; August 7, 1995, Filed *369 Decision will be entered for respondent with respect to the deficiencies only. Julius Paul Prince, pro se. For respondent: Aretha Jones. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes and penalties: Penalties
Year
Deficiency
Sec. 6663
1990
$ 31,279
$ 23,459
1991
69,270
51,953
In answering the petition, respondent concedes (by admitting) that petitioner was not liable for the section 6663 penalty for fraud. [1] Thus, the only issue remaining for decision is whether petitioner qualifies for innocent spouse relief pursuant to section 6013(e). All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. *370 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Background
Petitioner resided in Forestville, Maryland, at the time he filed his petition. He is a high school graduate. Beginning in 1973, and through the years in issue, petitioner worked as a bus driver for the Washington Metropolitan Area Transit Authority. Petitioner and Deborah L. Prince (the Princes) were married in 1976, and lived together at all relevant times, including the years in issue. Petitioner and Mrs. Prince are not, and have never been, legally separated or divorced. Mrs. Prince received a B.A. degree in accounting and worked as an accountant. She had been working as an accounting manager at Arlington Community Residences, Inc. (ACR), when, in 1987, she lost her job there because she was caught attempting to embezzle funds. During the years in issue, she served as director of Accounting Services for the Community Services for Autistic Adults and Children (CSAAC) in Rockville, Maryland. She was caught embezzling funds from CSAAC, and, in 1992, she pleaded guilty to embezzlement of funds *371 from CSAAC. Income and Miscellaneous Itemized Deductions
Petitioner earned $ 50,039 in 1990 and $ 49,756 in 1991 working as a bus driver. Mrs. Prince earned $ 34,340 and $ 32,080 for the same years, respectively, in her position with CSAAC. The Princes claimed Schedule A miscellaneous itemized deductions of approximately $ 66,000 for 1990 and $ 69,000 for 1991, of which approximately $ 30,000 and $ 42,000, respectively, were disallowed. Bank Accounts and Finances
During both years in issue, the Princes maintained a joint checking account at the Transit Employee Federal Credit Union (TEFCU). Petitioner also maintained a savings account at TEFCU. Petitioner authorized direct deposits from his paycheck into the savings account. Petitioner did not actively participate in family finances. He was not excluded from family financial matters, but he chose to allow the bulk of such activities to be handled by Mrs. Prince. Mrs. Prince paid the household bills during the years in issue. However, petitioner occasionally wrote checks on the checking account. Mrs. Prince used part of petitioner's salary to help pay the household bills. Bank statements were mailed directly to the *372 Princes. While petitioner occasionally opened the statements, he did not review them in detail. Mrs. Prince prepared the tax returns filed by the Princes, including those filed for the years in issue. Petitioner did not review the returns before signing them. Mrs. Prince's History of Embezzlement
In 1987, Mrs. Prince lost her job at ACR and was arrested, because she had attempted to embezzle funds. At that time, petitioner was aware of his wife's arrest, and he posted bail to get her released. Mrs. Prince subsequently admitted that she attempted to steal $ 45,000 from ACR. She received a sentence of 5 years' probation, which required her to meet once a month with a probation officer. Petitioner testified that he was not aware of his wife's sentence, nor of her ever meeting with a probation officer. In 1992, Mrs. Prince pleaded guilty to embezzlement from CSAAC. The following lists the amounts that Mrs. Prince embezzled from CSAAC, which amounts were not included in income on the joint returns that the Princes filed for the years in issue: Nature of Misappropriation
1990
1991 Unauthorized treasury checks
$ 25,000
$  36,840
Unauthorized checks
36,885
122,600
Unauthorized withdrawals
17,130
31,708
Missing equipment
1,545
-- Total
80,560
191,148
*373 Overall, Mrs. Prince embezzled approximately $ 326,679 from CSAAC from 1990 through 1992. Between September 1990 and March 1992, Mrs. Prince transferred $ 148,100 of CSAAC funds from CSAAC's bank account to the Princes' joint checking account at TEFCU. In addition, Mrs. Prince used CSAAC checks to purchase items for personal use. Petitioner had no direct knowledge during the years in issue of Mrs. Prince's embezzlement from CSAAC. In January 1993, Mrs. Prince received a 27-month prison sentence for her embezzlement from CSAAC. At the time the petition was filed in this case, she was in jail. Disposition of the Funds Embezzled From CSAAC
The Princes made improvements to their home during the years in issue; they paid for the improvements by using money embezzled by Mrs. Prince. They remodeled the kitchen and bath at a cost of $ 79,000, spent $ 4,980 on custom doors, and paid $ 5,602 for custom window treatments. Petitioner lived with Mrs. Prince while each of the improvements was being made. In 1992, the Princes listed their home for sale with a real estate agency at a price of $ 344,900. Mrs. Prince spent a portion of the embezzled moneys on family members and friends. *374 She purchased a $ 1,545 computer for their daughter, and gave approximately $ 40,000 to one of petitioner's sons to help cover the cost of his college education and to cover debts that he had incurred. Petitioner became aware of payments made to family members only after Mrs. Prince was indicted in 1992. The Princes owned three cars: (1) A 1989 Nissan Sentra; (2) a 1988 Nissan Pathfinder; and (3) a Mitsubishi 3000GT. Petitioner owned the Pathfinder and Mrs. Prince owned the other two cars. Mrs. Prince purchased the Mitsubishi for $ 28,692 in cash with funds embezzled from CSAAC, and petitioner drove the Mitsubishi. In response to petitioner's inquiry of Mrs. Prince as to where she got the money to pay for the home improvements and the new car, Mrs. Prince replied that she had received money from a partial settlement of a lawsuit arising from an automobile accident. Automobile Accident
On October 1, 1989, Mrs. Prince was involved in an automobile accident. Petitioner observed the car shortly after the accident, and he later drove the car away. Mrs. Prince filed a claim with the Government Employees Insurance Company (GEICO) under a policy maintained by the Princes. GEICO paid *375 $ 1,200 for car damages directly to the auto body shop. The Princes then filed a lawsuit against the insurance company in which Mrs. Prince claimed medical expenses and lost wages, and petitioner claimed loss of consortium. As of the date the present case was tried, the claims were still pending, and GEICO had not made any additional payments directly or indirectly to the Princes. Pursuant to GEICO procedures, in any case involving a claim for loss of consortium, any settlement check and release would have to contain the signatures of both spouses. Thus, petitioner would be required to sign the release and the check prior to receiving any cash award. Interview With FBI Special Agents
On April 14, 1992, two special agents with the Federal Bureau of Investigation (FBI) went to the Princes' home to speak with Mrs. Prince about the CSAAC embezzlement allegation. Mrs. Prince was not at home, but petitioner talked with the agents. During the conversation, petitioner recalled that Mrs. Prince was involved in an attempted embezzlement while employed with ACR, but expressed his belief that it was resolved without an arrest. The agents showed petitioner a series of copies of CSAAC *376 checks that were made out to the construction company making improvements to the Prince's home, and other checks made out to the Princes' TEFCU account. Based on his review of these checks, petitioner agreed that the renovations were paid out of CSAAC funds. OPINION Section 6013(a) enables a husband and wife to file a joint income tax return. Joint filing "is a highly valuable privilege * * * since the resulting tax liability is generally substantially less than the combined taxes that would be due from both spouses if they had filed separate returns." Sonnenborn v. Commissioner, 57 T.C. 373, 380-381 (1971). As a general rule, spouses who file joint income tax returns are liable for the full amount of the tax due on the combined incomes. Sec. 6013(d)(3). The issue we must decide is whether petitioner qualifies for innocent spouse relief pursuant to section 6013(e). Congress provides relief to a spouse from liability, under section 6013(e), if he or she proves each of the following four requirements: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable *377 to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * *.
These four requirements are conjunctive; petitioner bears the burden of proving that each is satisfied. Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993); Ratana v. Commissioner, 662 F.2d 220, 224 (4th Cir. 1981), affg. in part and revg. in part T.C. Memo. 1980-353. Failure to meet any of the statutory requirements will disqualify an individual from innocent spouse relief. Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63. Here, it is undisputed that petitioner and Mrs. Prince filed joint income tax returns for *378 both years in issue, and that there were substantial understatements of taxes attributable to grossly erroneous items of one spouse, namely, the amounts embezzled by Mrs. Prince. Therefore, we need only decide: (1) Whether petitioner knew, or had reason to know, of the substantial understatements of taxes for the years in issue; and (2) whether it is inequitable to hold him liable for the deficiencies in taxes. Pursuant to section 6013(e)(1)(C), petitioner must prove that he did not know, and had no reason to know, of the substantial understatements when he signed the Princes' 1990 and 1991 joint returns. It is clear that petitioner was not involved in Mrs. Prince's embezzlement scheme. And we believe that Mrs. Prince never told petitioner about the embezzlement. Thus, we conclude that petitioner did not know of the substantial understatements. However, our inquiry does not stop here. The statute requires us to decide whether petitioner had reason to know of the understatements. "The standard to be applied in determining whether a taxpayer 'had reason to know' is whether a reasonably prudent person with knowledge of the facts possessed by the person claiming innocent spouse status *379 should have been alerted to the possibility of a substantial understatement." Flynn v. Commissioner, 93 T.C. 355, 365 (1989). These matters are questions of fact. Clevenger v. Commissioner, T.C. Memo. 1986-149, affd. 826 F.2d 1379 (4th Cir. 1987). We must consider whether the facts in this case show that petitioner had reason to know of the substantial understatements. Based on petitioner's educational level, his conduct at trial, his knowledge of and relationship with Mrs. Prince, and the brief he submitted to this Court, we believe petitioner could reasonably be expected to know that the returns contained substantial understatements. See Turner v. Commissioner, T.C. Memo. 1988-339. Petitioner chose not to participate in most of the Princes' business and financial affairs. However, he did have access to their TEFCU joint checking account, which was used to pay the family expenses. The record contains two checks written by petitioner drawn on this joint account. Petitioner was aware of the balance in their joint checking account during the years in issue. Occasionally *380 he opened the bank statements. The fact that petitioner did not take an interest in the management of the family finances is not determinative of whether he would have reason to know that the returns contained substantial understatements. Mysse v. Commissioner, 57 T.C. 680, 699 (1972). The record establishes that there were a series of expenditures that seemed unusual. Although the Princes testified that they did not consider their lifestyles in 1990 and 1991 to be lavish, the substantial improvements made to their home, the purchase of a new Mitsubishi 3000GT, and the cash disbursements to a number of family members are indicative of lavish expenditures that exceeded their usual income. In fact, petitioner testified that he knew Mrs. Prince's income for the years in issue, and the amount of their combined income. While petitioner did not prepare the Princes' 1990 and 1991 Federal income tax returns, their expenditures were such that he had reason to know that they exceeded the amounts of his and his wife's legitimate income. "To be entitled to the benefits of section 6013(e) a spouse is not required to have perfect knowledge of the family's finances; *381 nor is * * * [he] required to see that the family maintains a balanced budget; however, * * * [he] cannot close * * * [his] eyes to unusual or lavish expenditures." Id. Petitioner trusted his wife to handle the family's financial affairs. The record is devoid of any facts suggesting that petitioner was excluded from actively participating in the maintenance of the family finances. Mrs. Prince did not prevent petitioner from taking part in financial matters. When petitioner questioned Mrs. Prince about financial matters, he was told that moneys were coming from a partial settlement relating to an automobile accident. The record, however, indicates that a reasonable person would have had substantial grounds to question this. Petitioner was a party to a claim submitted to the Princes' insurance company, and an insurance representative testified that any money paid to the Princes would have required petitioner's signature for verification. At the time this case was tried, GEICO had not paid any money to the Princes. Moreover, in 1987, petitioner posted bail to release Mrs. Prince from jail on embezzlement charges. He was fully aware of the charges brought against his wife. In fact, *382 one of the FBI agents testified that petitioner recalled an embezzlement allegation made against Mrs. Prince by a former employer. Therefore, a reasonably prudent person in petitioner's position, knowing that his spouse had been charged with embezzlement, would be more attentive to their finances. A duty of inquiry arises where a spouse has sufficient knowledge of the facts underlying the transaction so that a reasonably prudent taxpayer in the spouse's position would seriously question the gross income stated on the joint return. Park v. Commissioner, 25 F.3d 1289, 1293 (5th Cir. 1994), affg. T.C. Memo. 1993-252. An individual with petitioner's education and experience can reasonably be expected to question the reported income when compared to the other expenditures made during the years in issue. Based on the Princes' collective earnings for 1990 and 1991, and considering the expenses giving rise to the respective Schedule A miscellaneous itemized deductions, we think petitioner failed to satisfy his duty of inquiry as to the source of the income for the family's expenditures. A spouse is not allowed to deliberately turn *383 away from relevant facts and assume an "ostrich imitation" stance. Clevenger v. Commissioner, supra at 843. We thus conclude that a reasonable, prudent person in petitioner's position should have known of the substantial understatements. Petitioner also fails to meet the condition required in section 6013(e)(1)(D), which provides "taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement". One factor in deciding whether it is inequitable to hold a spouse liable is whether a spouse substantially benefited from the erroneous items. Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); sec. 1.6013-5(b), Income Tax Regs. However, "ordinary support" is not a substantial benefit. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). Ordinary support is to be measured by the circumstances of the parties. Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975). Here, the evidence demonstrates *384 that petitioner substantially benefited from Mrs. Prince's 1990 and 1991 embezzlement income. A large sum of the embezzled funds went into petitioner's joint checking account. Petitioner had access to this account, and the record shows two checks written and signed by him during the time his wife was depositing the embezzled funds. Also, Mrs. Prince testified that petitioner's lifestyle was enhanced by the home improvements and the purchase of a new car, and the record reflects that these items were financed with embezzled funds. Thus, the embezzled funds were used to benefit petitioner beyond ordinary support. Further, the record indicates that petitioner and Mrs. Prince were together on a daily basis during the years in issue, and they had not been separated or divorced. Mrs. Prince has not "left * * * [petitioner] to 'face the music' alone, and * * * [he] has not been deserted in the sense foreseen by the legislators who enacted the innocent spouse defense." Hayman v. Commissioner, 992 F.2d 1256, 1263 (2d Cir. 1993), affg. T.C. Memo. 1992-228. Therefore, giving consideration to all the facts and circumstances, we believe *385 it would not be inequitable to hold petitioner liable for the deficiencies. As stated previously, all four requirements of section 6013(e) must be met; here, petitioner has failed to meet two of them. Accordingly, he is not entitled to innocent spouse relief. Petitioner is jointly and severally liable for the deficiencies in the taxes arising from the unreported embezzlement income. To reflect the foregoing and concession by respondent, Decision will be entered for respondent with respect to the deficiencies only. Footnotes
1. The notice of deficiency was mailed to petitioner and his wife, Deborah L. Prince, who filed joint Federal income tax returns for both years in issue. Mrs. Prince did not join in the petition filed by her husband and therefore is not a party in this case. Respondent did not concede the fraud penalties with respect to Mrs. Prince.↩