T.C. Memo. 1995-523

UNITED STATES TAX COURT

ESTATE OF MARK R. WOODWARD, DECEASED, LILLIAN H. WOODWARD,
EXECUTRIX, AND LILLIAN H. WOODWARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10137-88.                  Filed November 6, 1995.


<u>Victor F. Keen</u>, for petitioners.

<u>John Aletta</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Robert N. Armen, Jr., pursuant to the provisions of section
7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the

Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  Respondent determined

deficiencies in petitioners' Federal income taxes and additions

to tax for the taxable years as follows:

| | | Additions to Tax | | | |
| | | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(a) | 6653(a)(1) | 6653(a)(2) | 6659(a) |
| 1980 | $10,180 | $509 | --- | --- | $3,054 |
| 1981 | 9,620 | --- | $481 | [1] | 2,886 |
| 1982 | 700 | --- | 35 | [2] | --- |
| 1983 | 755 | --- | 38 | [3] | --- |

[1] 50 percent of the interest due on $9,620.
[2] 50 percent of the interest due on $700.
[3] 50 percent of the interest due on $755.

Respondent also determined that petitioners are liable for

the increased rate of interest under section 6621(c) for the

taxable years 1980 and 1981.

After concessions by the parties,[2] the only issue remaining

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner Estate of Mark R. Woodward, Deceased, concedes all of the determinations set forth in the notice of deficiency except for the additions to tax under sec. 6659(a) for the taxable years 1980 and 1981.  For the taxable years 1980 and 1981, petitioner Lillian H. Woodward (petitioner) concedes that if petitioner is not an innocent spouse, then she is liable for the deficiencies in tax and additions to tax under secs. 6653(a), 6653(a)(1), and 6653(a)(2), and the increased rate of interest under sec. 6621(c) as determined by respondent.  For the taxable years 1982 and 1983, petitioner concedes that she is liable for the deficiencies in tax and additions to tax as determined by respondent.  For the taxable years 1980 and 1981, respondent concedes that petitioners are not liable for the addition to tax under sec. 6659(a).

for decision is whether petitioner Lillian H. Woodward (petitioner) qualifies for relief as an innocent spouse under section 6013(e) for the taxable years 1980 and 1981.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. Petitioners resided in Shaker Heights, Ohio, at the time their petition was filed with the Court.

1. General Background

Petitioners were married at all relevant times. From 1980 to 1983, petitioners timely filed joint individual Federal income tax returns.

Petitioner received a bachelor's degree in history from the University of California at Los Angeles. Thereafter, petitioner worked for a suburban newspaper for approximately 2 years. Petitioner then entered the U.S. Coast Guard. At some point petitioner married Mark R. Woodward and remained married to him until his death in 1991. Petitioner and Mr. Woodward had three children. Although petitioner did not work outside the home while she raised her children, she resumed working in 1970 as a customer service representative for the Higbee Company, a department store in Cleveland, Ohio. Petitioner worked for the Higbee Co. until 1985. Her duties as a customer service representative included tracing deliveries and answering customers' questions that could not be handled on the floor by a salesperson. Petitioner earned $14,118.36 in 1983 working as a customer service representative.

Mr. Woodward attended the University of Illinois for 3 years, but did not obtain a college degree.  During the taxable years at issue, Mr. Woodward worked as a district sales manager for the Master Builders division of the Martin-Marietta Corp. Mr. Woodward retired in 1982.

Petitioner and Mr. Woodward maintained a joint checking account for the taxable years 1980 through 1983.  Prior to Mr. Woodward's retirement, petitioner and Mr. Woodward shared the clerical tasks concerning household expenses.  For example, both Mr. Woodward and petitioner paid the mortgage and utility bills. However, Mr. Woodward was responsible for the family's financial planning, including tax preparation.  After his retirement, Mr. Woodward managed the family's financial affairs, including paying household expenses, without the help of petitioner.  Mr. Woodward recorded family financial matters on his computer.  Petitioner did not know how to operate the computer.

On December 8, 1983, Mr. Woodward invested in a tax shelter promoted by Saxon Energy Corp. (Saxon).[3]  Thomas Graham of Graham & Associates introduced Mr. Woodward to the Saxon Energy investment.  Petitioner knew Mr. Woodward was considering making an investment with Graham & Associates, but did not know anything specifically about the Saxon tax shelter.  When petitioner's signature was needed on the investment documents, Mr. Woodward

---

[3] See Schillinger v. Commissioner, T.C. Memo. 1990-640, affd. per order 1 F.3d 954 (9th Cir. 1993) (discussing the Saxon Energy program in some detail).

signed her name.[4]  Petitioner was not aware that her husband was signing the Saxon documents on her behalf.  Mr. Woodward's actions were consistent, however, with petitioners' arrangement for Mr. Woodward to manage the financial planning.  Although Mr. Woodward did not discuss the Saxon investment with petitioner, he did not conceal his business activities or the family's financial affairs from her.

On their joint income tax return for the taxable year 1983, petitioners reported the putative income tax consequences of their Saxon investment including claimed Schedule C deductions totaling $14,168, and a claimed investment tax credit in the amount of $20,500.  Concurrently with the filing of their return, petitioners filed Form 1045, Application For Tentative Refund, which generated refunds by carrying back unused investment tax credits of $10,180, $9,620, and $700 to the taxable years 1980, 1981, and 1982, respectively.  Mr. Woodward prepared the joint returns for 1980 and 1981.  Graham & Associates prepared the joint returns for 1982 and 1983.

Petitioner signed each of the income tax returns that she and Mr. Woodward filed with the Internal Revenue Service (IRS). Petitioner also signed the Form 1045, Application For Tentative Refund, filed with the IRS.  Petitioner trusted Mr. Woodward to handle their financial matters, including tax return preparation.

---

[4] Mr. Woodward signed petitioner's name on most of the Saxon documents including the lease application, the business adviser's questionnaire, the lease agreement, and the election to pass investment tax credit from lessor to lessee.

Thus, when Mr. Woodward requested that petitioner sign the income tax returns and application for refund, she did so without examining them and without hesitation.

Mr. Woodward died in 1991. Petitioner was the sole beneficiary of his estate.

During their marriage, petitioner and Mr. Woodward did not live extravagantly, nor did their standard of living vary dramatically over the course of their marriage. In 1983 petitioners sold their home and rented an apartment. Petitioners did not purchase any "big ticket" items in 1983, 1984 or 1985. At some point in 1983 or 1984, petitioners leased a Chevrolet Nova automobile.

2. The Income Tax Returns

On their joint income tax returns for 1980 through 1983, petitioner and Mr. Woodward reported total income and income tax as follows:

| Year | Total income | Income tax |
|------|-------------|------------|
| 1980 | $48,585.21 | [1]$10,180 |
| 1981 | 47,598.00 | [2]9,620 |
| 1982 | 47,388.00 | [3]5,233 |
| 1983 | 1,568.00 | --- |

[1] Without regard to the claimed investment credit carryback from 1983 in the amount of $10,180.

[2] Without regard to the claimed investment credit carryback from 1983 in the amount of $9,620.

[3] Without regard to the claimed investment credit carryback from 1983 in the amount of $700.

a. 1983 Return

Petitioner and Mr. Woodward attached a Schedule C to their

income tax return for 1983. The Schedule C revealed that the proprietorship's main business activity was "investments" and reported negative gross income in the amount of $7,455 in respect of "Frozen Confection of Ohio 1983-1". The Schedule C claimed total deductions in the amount $14,576. Of the $14,576 claimed deductions, at least $14,168 were claimed in respect of the Saxon investment. In this regard, petitioners claimed a $13,500 deduction as an equipment lease expense and $668 for management expenses. A net loss in the amount of $22,031 was then claimed on the Schedule C and was used to dramatically reduce income reported from other sources. Petitioners ultimately reported negative taxable income in the amount of $5,702 and claimed a refund of all of the income tax withheld from their compensation.

Petitioner and Mr. Woodward also attached Form 3468, Computation of Investment Credit, to their income tax return for 1983. In Part II of Form 3468, petitioner and Mr. Woodward claimed an unadjusted basis in their investment property in the amount of $205,000.[5] Based upon this value, petitioners claimed an investment credit in the amount of $20,500. Of this amount, petitioners used $0 in 1983, and carried back $10,180, $9,620, and $700 to 1980, 1981, and 1982, respectively.

3. The Application for Tentative Refunds

In or about early March 1984, petitioner and Mr. Woodward filed Form 1045, Application For Tentative Refund. The Form 1045

---

[5] The business name of the investment was not disclosed. However, the Form 3468 relates to Saxon.

claimed refunds in the amount of $10,180, $9,620, and $700 for the taxable years 1980, 1981, and 1982, respectively.

4.  The Notice of Deficiency

In the notice of deficiency, respondent disallowed the Saxon deductions claimed by petitioners on their Schedule C for equipment leasing and management expenses in the amount of $14,168.

In the notice of deficiency, respondent also disallowed the investment tax credit claimed by petitioners on Form 3468 in the amount of $20,500.

ULTIMATE FINDING OF FACT

In signing the joint income tax return for 1983 and the application for refund, petitioner had reason to know that there were substantial understatements of tax attributable to grossly erroneous items.

OPINION

1.  Background

The parties have resolved all of the issues in this case except whether petitioner qualifies for relief as an innocent spouse under section 6013(e) for the 2 taxable years in issue.

Section 6013(a) permits a husband and wife to file a joint income tax return.  This is a valuable privilege because the filing of a joint return generally serves to decrease the spouses' overall tax liability.  Sec. 1.

The privilege of filing a joint income tax return does not come without a price, however.  Thus, as a general rule, spouses

who file joint income tax returns are jointly and severally liable for the full amount of tax due on the combined incomes. Sec. 6013(d)(3).

Joint and several liability applies even under circumstances where "one spouse may be far less informed about the contents of the return than the other".  Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971).  However, the general rule is somewhat mitigated by the innocent spouse provisions of section 6013(e).

Section 6013(e) relieves a spouse of liability, to the extent provided by the statute, for tax (including interest, penalties, and other amounts) if each of the following four requirements is satisfied: (1) A joint Federal income tax return was filed by the spouses; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the putative innocent spouse neither knew, nor had reason to know, of such substantial understatement; and (4) taking into account all the facts and circumstances, it would be inequitable to hold the putative innocent spouse liable for the deficiency attributable to the understatement.  Sec. 6013(e)(1).  If the substantial understatement is attributable to any claim of a deduction, credit, or basis by the other spouse in an amount for which there is no basis in fact or law, then an additional requirement must be satisfied; namely, the substantial understatement must exceed a specified percentage of the putative innocent spouse's adjusted gross income for the "preadjustment year".  Sec. 6013(e)(4).

The putative innocent spouse has the burden of proving that each of the foregoing requirements is satisfied. Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). Failure to satisfy any of the requirements will preclude a holding that the putative innocent spouse is entitled to relief under section 6013(e). Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63.

The parties agree that petitioner and Mr. Woodward filed joint income tax returns for the taxable years 1980 through 1983. The parties also agree that the credits claimed by petitioner and Mr. Woodward for the taxable years 1980 and 1981 are grossly erroneous items giving rise to understatements of tax for those years. Although it is far from apparent, we shall proceed on the basis that the grossly erroneous items were items of Mr. Woodward. Further, the parties agree that the substantial understatements of tax exceeded the requisite percentage of income in 1987, the preadjustment year. Therefore, in order to be relieved of liability as an innocent spouse, petitioner must prove: (1) In signing the income tax return for 1983 and the application for refund, she neither knew, nor had reason to know, of the substantial understatements of tax on her refund claims for 1980 and 1981; and (2) it would be inequitable to hold her liable for the deficiencies attributable to such understatements. Sec. 6013(e)(1)(C) and (D).

2.   Knowledge or Reason to Know of the Substantial
     Understatement

Petitioner must show that she did not know or have reason to know of the substantial understatements attributable to her husband's tax shelter investment when she signed the 1983 return and application for refund filed in 1984.

a.   Actual Knowledge

We must first decide whether petitioner had actual knowledge of the understatements when she signed the 1983 return and the application for refund.  Respondent does not contend that petitioner knew about the understatements at that time.  The record does not contain any evidence indicating that petitioner had actual knowledge of the understatements.  Thus, we find that petitioner did not have actual knowledge of the understatements when she signed the 1983 return and application for refund.

b.   Reason to Know

We must next decide whether petitioner had reason to know of the substantial understatements of income tax when she signed the 1983 return and application for refund filed in 1984.  Respondent contends that petitioner had reason to know of the understatements caused by the Saxon investment tax credit carrybacks.  For the following reasons, we agree with respondent that petitioner had reason to know of the substantial understatements of tax at the critical time, and that, therefore, petitioner does not qualify for relief as an innocent spouse.

The standard to be applied in determining whether a taxpayer "had reason to know" is whether a reasonably prudent person under

the circumstances of the person claiming innocent spouse relief at the time of signing the return or other relevant document could be expected to know that the tax liability was erroneous or that further investigation was warranted. Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. in part, revg. in part and remanding T.C. Memo. 1984-310; Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975); Bokum v. Commissioner, supra at 148; Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979).

Whether a reasonable person under the circumstances of the taxpayer at the time of signing the return or other relevant document could be expected to know of a substantial understatement is a question of fact. Clevenger v. Commissioner, 826 F.2d 1379 (4th Cir. 1987), affg. T.C. Memo. 1986-149. Courts have considered a variety of factors in deciding whether a taxpayer had reason to know of a substantial understatement. These factors may also give a taxpayer a duty to inquire as to the existence of an understatement which, if not satisfied, may lead to the conclusion that the taxpayer had reason to know of the understatement. Pettinato v. Commissioner, T.C. Memo. 1995-85. No single factor controls. Id. Accordingly, we consider the following factors in deciding whether petitioner had reason to know of or a duty to inquire with respect to the understatements of income tax at issue here.

(i) Petitioner's level of education

In the instant case, petitioner is a college graduate. An individual with petitioner's education and experience can

reasonably be expected to question an application for refund that purports to eliminate all Federal income tax liability for 2 previous taxable years.  We conclude that petitioner's educational level was such that, if she had examined the 1983 income tax return or application for refund, she would have recognized that substantial understatements might exist or that further investigation was warranted.

        (ii) <u>Petitioner's involvement in the family's financial affairs</u>

Another factor to consider is petitioner's involvement in the family's financial affairs.  Petitioner and Mr. Woodward maintained a joint checking account.  Prior to Mr. Woodward's retirement, petitioner shared responsibilities in matters relating to household expenses such as paying bills.  After his retirement, and for the year in question, 1983, Mr. Woodward was responsible for both the family's financial planning and for all matters concerning household expenses.  Mr. Woodward did not prevent petitioner from taking part in financial matters; rather, petitioner chose not to participate in the financial affairs and trusted her husband to handle them.  As petitioner shifted the responsibility for financial matters to Mr. Woodward, she cannot claim a lack of knowledge of these affairs as a basis for receiving innocent spouse protection where she was under a duty to inquire into the legitimacy of the tax deductions and credits claimed.

Although petitioner could not operate the computer on which the financial records were kept, she could have asked her husband

to help her gain access to the records.  Nothing in the record indicates that Mr. Woodward would have objected to making the records more easily available to petitioner.

(iii)  <u>Unusual or lavish expenditures in comparison to the standard of living in prior years</u>

We accept petitioner's testimony that she and Mr. Woodward did not live extravagantly nor did their standard of living vary dramatically over the course of their marriage.  We take note, however, that their standard of living from 1983 forward was financed, at least in part, by their Federal income tax refunds from 1980 and 1981.

(iv) <u>The culpable spouse's evasiveness concerning the family's finances</u>

Although the record shows that Mr. Woodward did not tell petitioner specifically about the tax shelter investment, he did not conceal the facts about the business transaction.  The following exchange between petitioners' attorney and petitioner illustrates the nature of the financial relationship between petitioner and Mr. Woodward:

Q:    * * * With respect to the investments that were made, I think you've testified that your husband was really responsible for those matters.  Did your husband ever ask your permission with respect to making investments?

A:    No.

Q:    Did he ever seek your advice or your approval in making investments?

A:    No. Mostly I didn't understand any financial deals or whatever you call it.

Q:    And the reason -- you may have just answered -- the reason that he did not ask you for your advice or necessarily tell you what he was doing was what?

A: Well, because I wouldn't have understood it in the first place.

Q: So you didn't have a problem with that arrangement, that he was not hiding things from you, he was just --

A: No. I trusted him and he trusted me.

Petitioner chose to rely on Mr. Woodward regarding financial matters.

### (v) Large deductions or credits that substantially eliminate taxable income

This factor is particularly significant in this case. Large deductions or credits, particularly those that completely or substantially eliminate taxable income, may give a taxpayer reason to know that an understatement exists or a duty to inquire as to the legitimacy of the deduction or credit. Pettinato v. Commissioner, supra. By failing to examine the 1983 return and the application for refund, petitioner chose to ignore facts that would have given her reason to know of the substantial understatements. Even the most cursory perusal of the application for refund would have revealed claims for refunds for all Federal income taxes paid in 1980 and 1981. A reasonably prudent person in petitioner's position would have certainly questioned the legitimacy of these refunds. Petitioner, by declining to do so, failed in her duty of inquiry.

By failing her duty of inquiry, petitioner is charged with constructive knowledge of the substantial understatements appearing in the income tax returns. See Park v. Commissioner, 25 F.3d 1289, 1299 (5th Cir. 1994) ("by signing the return * * * [the putative innocent spouse] undertook responsibility for it

which she cannot escape by simply ignoring its contents"), affg. T.C. Memo. 1993-252; see also Lauer v. Commissioner, T.C. Memo. 1994-579 ("a taxpayer is not permitted to obtain the benefits of section 6013(e) by turning a blind eye to--by preferring not to know of--facts clearly within his or her grasp, or fully disclosed on a return that the taxpayer signed"); McComb v. Commissioner, T.C. Memo. 1994-577 ("A spouse may not obtain protection as an innocent spouse in deduction cases by turning a blind eye to facts fully disclosed on a return which, if she had looked at the return, would reasonably have put her on notice that further inquiry was needed").

3.  Conclusion

We hold that petitioner, in signing the 1983 Federal income tax return and application for refund, had reason to know, within the meaning of section 6013(e)(1)(C), of the substantial understatements of income tax for 1980 and 1981.  Because we so hold, we need not address whether it would be equitable or inequitable to hold petitioner liable for the deficiencies in tax attributable to those understatements.

In view of the foregoing, we sustain respondent's determination that petitioner is liable for the deficiencies in tax and additions to tax as set forth in the notice of deficiency.  Sec. 6013(d)(3).

In order to give effect to our disposition of the disputed issue, as well as the parties' concessions,

Decision will be entered for respondent, except as to the addition to tax under section 6659(a) for the taxable years 1980 and 1981.