Clifton **CLEVENGER**,
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 86–3655.

United States Court of Appeals,
Fourth Circuit.

Argued June 2, 1987.
Decided Aug. 28, 1987.

---

Donald William Geerhart, Robert D. Grossman, Jr. (Grossman & Flask, P.C., Washington, D.C., on brief), for petitioner-appellant.

Teresa Ellen McLaughlin, Tax Div., Dept. of Justice (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, Gilbert S. Rothenberg, Tax Div., Dept. of Justice, Washington, D.C., on brief), for respondent-appellee.

Before HALL, SPROUSE and WILKINSON, Circuit Judges.

SPROUSE, Circuit Judge:

Clifton L. Clevenger appeals from the decision of the Tax Court denying him relief under the "innocent spouse" provision of the Internal Revenue Code. 26 U.S.C. § 6013(e). The court held him jointly liable with his wife Catherine for personal income tax deficiencies totaling $189,199 for the tax years 1973 through 1977. We affirm.

During the relevant years, Clifton and Catherine Clevenger each owned a fifty-percent interest in two construction contracting corporations, Clevenger Corporation and C & C Builders, Inc. Clifton was President and Catherine Secretary-Treasurer of both corporations. As president, Clifton oversaw all construction projects and submitted bids and estimates on projects. Clifton also sorted the company mail, but routed all bills and invoices directly to Catherine without examining them. Catherine was responsible for all corporate financial and accounting matters. The accountant (Catherine's father) prepared the corporate tax returns each year based solely on work papers she provided. Catherine also solely managed the family's finances and helped the accountant prepare their joint personal tax returns each year.

In the early 1970s, the Clevengers started to have marital problems. By 1973, the problems had accelerated to the point that they avoided each other by working opposite hours. In 1975, Catherine moved out of the "marital" home on Tucker Lane, Sandy Spring, Maryland, which she and Clifton owned as tenants by the entirety. They also owned a farm on Brown Bridge Road, Fulton, Maryland, where their son lived, and property in Highland, Maryland. Clifton and Catherine divorced in 1982. As part of the property settlement, Clifton received the Tucker Lane property, Catherine the Highland property. They conveyed the Brown Bridge property to their son. Finally, Catherine conveyed her stock in the corporations back to the corporations, although under the terms of the settlement agreement she was to have conveyed it to Clifton directly.

Beginning in 1973, the corporations made substantial improvements to the three properties. Clifton opened job sheets on the Tucker Lane and Brown Bridge properties. Improvements to the Tucker Lane property in 1973 and maintenance services provided throughout the relevant years totalled approximately $45,000. Construction costs on the Brown Bridge property in 1974 exceeded Clifton's $44,500 estimate by $15,000 to $20,000 after a barn, fences, outbuildings and a pond were constructed in addition to a house. Clifton was unaware of the additional costs until October 1977,

when he learned of the barn. In 1975, Catherine opened a job sheet on the Highland property with an estimate of $40,000 for the construction of a house. The construction costs actually exceeded $200,000 due to an upgrade in the design of the house and the addition of a barn and a pool. Clifton did not direct the construction at Highland, which was completed in 1977, and was unaware of the actual costs until February 1980.

These improvements form the basis for the tax deficiencies assessed against the Clevengers. Clifton and Catherine never paid the corporations for the construction and services at their property. They also never reported the cost of the improvements as income (as constructive dividends) on their joint personal income tax returns.[1] In 1980, the Commissioner of Internal Revenue mailed Clifton and Catherine notices of deficiency, claiming that the expenses incurred by the corporations in improving the properties constituted constructive dividends. The Commissioner assessed "additions to tax" because he determined the deficiencies were due to fraud.[2] 26 U.S.C. § 6653(b).

Clifton and Catherine separately petitioned the Tax Court for review of the Commissioner's determination and assessments. The Tax Court ruled that the construction expenses constituted constructive dividends that should have been included in their joint personal income tax returns. It

determined, however, that Clifton should not be liable for the fraud penalties,[3] but denied his further claim that he should be relieved of liability on the deficiencies under the innocent spouse provision. Clifton appeals only the Tax Court's holding that he did not establish that he qualified as an "innocent spouse."

Section 6013(e) provides in pertinent part:

(e) Spouse Relieved of Liability in Certain Cases.—

(1) In General.—Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable

---

1. In 1977, they executed notes to the corporations totalling $84,500 for the construction at Brown Bridge and Highland. The notes were partially cancelled in 1980. The Commissioner agreed to reduce the constructive dividends received in 1977 and 1978 by the cancelled amount of the notes.

2. In May 1979, Clifton and Catherine were indicted under 26 U.S.C. § 7201 for attempting to evade income taxes by filing fraudulent personal returns for 1973 through 1977. The charges against Clifton were dismissed upon the recommendation of the U.S. Attorney. The U.S. Attorney entered a motion nolle prosequi with respect to the charges against Catherine. The Clevengers were also indicted under 26 U.S.C. § 7206 for filing false and fraudulent corporate tax returns for 1973 through 1977. Catherine

entered a guilty plea for the 1977 tax return and was sentenced to two years imprisonment. The charges against Clifton were dismissed at the U.S. Attorney's recommendation.

3. Catherine stipulated before trial that the deficiencies were correct and were attributable to fraud by her. Catherine not only was the corporate officer who was completely (and perhaps solely) knowledgeable concerning the financial affairs of the companies, but she was also the culpable party in failing to report as income the cost of the improvements to their private properties. The court determined that Clifton's decision to allow Catherine complete control over the business and family finances "may have been unwise and perhaps grossly negligent," but did not evince an intent to defraud.

year to the extent such liability is attributable to such substantial understatement.

26 U.S.C. § 6013(e)(1). The taxpayer claiming relief as an "innocent spouse" bears the burden of proving that each subsection of § 6013(e)(1) is satisfied. *Ratana v. Commissioner*, 662 F.2d 220, 224 (4th Cir. 1981); *Shea v. Commissioner*, 780 F.2d 561, 565 (6th Cir.1986). The determination of whether the taxpayer has met the conditions for relief is a question of fact and will be upheld unless clearly erroneous. *Ratana*, 662 F.2d at 224; *Shea*, 780 F.2d at 565. In this case, the Tax Court found that Clifton satisfied the requirements of subsections (A) and (B), but determined that he failed to satisfy either subsection (C) or (D). Clifton, of course, contends that the Tax Court erred in its findings on subsections (C) and (D).

With respect to subsection (C), the Tax Court found that Clifton failed to establish that he had no reason to know of the understatements. It found that he should have known that the improvements were made and that they constituted dividend income. The court reasoned that the corporations' expenditures were extreme, two of the properties were located near his office and home, he lived in one of the properties, and he possessed the expertise over construction estimates and bids to realize the value of the improvements. The Tax Court said:

> [A] mere viewing of the extensive construction at Highland and Brown Bridge should have aroused his conscience to warrant a determination as to whether the interests of Clevenger Corporation were properly treated. As to the improvements at Tucker Lane, Clifton reasonably should have been aware or at least inquisitive as to whether the [Clevengers] in fact reimbursed Clevenger Corporation concerning the improvements.

It further found that while Catherine's actions to hide her manipulations of corporate accounting and the marital stress relieved Clifton of liability for fraud penalties, his "ostrich imitation [with respect to the joint returns] was not reasonable and that he certainly should have been aware that these extensive improvements to real property constituted dividend income."

Under subsection (D), "all the facts and circumstances" are to be considered in determining whether it would be inequitable to hold the spouse liable. 26 U.S.C. § 6013(e)(1)(D). The benefit to the spouse as a result of the understatement of income is one fact to be considered. *Sanders v. United States*, 509 F.2d 162, 170–71 (5th Cir.1975). The improvements were made to property Clifton jointly owned with Catherine. Moreover, pursuant to their property settlement, Clifton received Catherine's interest in the corporations and the Tucker Lane property. Under these facts, the Tax Court found that it would not be inequitable to hold Clifton liable for the deficiencies. To the contrary, it concluded that it would be inequitable not to hold Clifton liable since his property was improved and he knew or should have known that "[s]omething [was] rotten in Denmark."

Clifton makes a number of legal arguments concerning the Tax Court's rulings on subsections (C) and (D). Its determinative rulings are factually based, however, and we cannot conclude the court's findings are clearly erroneous. Nor do we find any error in its application of § 6013(e) principles to those findings. We therefore affirm.

AFFIRMED.