Nancy SILVERMAN and Estate of
Sheldon Silverman, Deceased,
Petitioners.

Nancy Silverman, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.

No. 96–1680.

United States Court of Appeals,
Sixth Circuit.

Argued April 22, 1997.

Decided June 18, 1997.

William F. Russo (argued and briefed),
Katz, Teller, Brant & Hild, Cincinnati, OH,
Gary S. Weinick (briefed), Blaustein & Wein-
ick, Garden City, NY, for Petitioner–Appel-
lant.

Gary R. Allen, Acting Chief, Regina S.
Moriarty (argued and briefed), U.S. Depart-
ment of Justice, Appellate Section, Tax Divi-
sion, Teresa E. McLaughlin, U.S. Depart-
ment of Justice, Tax Division, Washington,
DC, for Respondent–Appellee.

Before: MERRITT, RYAN, and HILL *,
Circuit Judges.

HILL, Circuit Judge.

## OPINION

Appellant Nancy Silverman appeals the
decision of the tax court that she fails to
qualify as an "innocent spouse" under Sec-
tion 6013(e) of the Internal Revenue Code
and is liable for a 1981 tax deficiency gener-
ated by her (now deceased) husband's wrong-
doing. 26 U.S.C. § 6013(e). For the follow-
ing reasons, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In her twelve-year marriage, Nancy Silver-
man was a traditional housewife. Her hus-
band Sheldon was a successful businessman
in the garment industry. Together they had
two children. Other than maintaining the
household account, Nancy did not participate
in business or tax return preparation. She
was unaware of Sheldon's business or finan-
cial affairs.

* The Honorable James C. Hill, Circuit Judge of the
United States Court of Appeals for the Eleventh
Circuit, sitting by designation.

Sheldon invested in State Coal Venture, a typical tax shelter of the times. In 1981, he took a $1,600,000 royalty deduction for State Coal. Nancy did not sign the 1981 tax return and was unaware of the deduction. Nevertheless, that deduction, later proven to be erroneous, reduced the Silverman's joint 1981 tax liability to zero and generated an overpayment of taxes withheld for 1981. After first satisfying the Silverman's (unrelated and) outstanding 1980 tax liability, the Commissioner of the Internal Revenue Service refunded the $81,000 balance (the 1982 refund for 1981). Sheldon spent the money in two weeks.

Although the 1982 refund check for 1981 was made jointly, Nancy was unaware of its existence until after Sheldon's death in August, 1986. Sheldon died leaving an insolvent probate estate.[1] One month after Sheldon's death, Nancy filed amended joint tax returns for 1979, 1980, and 1981, claiming refunds of previously paid taxes. On these amended returns, Nancy claimed that the refunds arose from other deductions (unrelated to the erroneous State Coal royalty deduction) that Sheldon had overlooked but to which they were entitled. For the 1980 year in particular, upon the conclusion of an audit previously underway, the Commissioner agreed that a refund was in order. She issued a $129,000 check to Nancy in 1988 (the 1988 refund for 1980).

Before Nancy filed the amended joint returns, the Commissioner had already begun an audit of the Silverman's 1981 year in which the State Coal deduction was taken. This audit began before Sheldon's death in August, 1986. It concluded sometime in 1987. As a result of the audit, the Commissioner issued a notice of deficiency to Nancy for the tax year 1981 in the amount of $185,-000. The deficiency was attributable entirely to Sheldon's erroneous State Coal royalty deduction. By this time, the year is 1989.

Nancy filed a timely petition for redetermination of the 1981 deficiency of $185,000 in the tax court. The parties agreed on all issues except one, that is, on equity grounds, whether Nancy qualified for relief from joint liability as an "innocent spouse" under section 6013(e)(1)(D). Thirty-nine months after trial, the tax court issued a memorandum opinion, finding that it was not inequitable to hold Nancy liable for the tax deficiency. By this time, the deficiency and accrued interest exceeded one million dollars. This appeal follows.

## II. ISSUE ON APPEAL AND STANDARD OF REVIEW

Whether the tax court clearly erred in determining that Nancy did not qualify for relief from joint liability for federal income taxes as an innocent spouse under section 6013(3)(1)(D) of the tax code on the ground that it is "not inequitable" to hold her liable. *Shea v. Commissioner,* 780 F.2d 561, 565 (6th Cir.1986); *Estate of Quirk v. Commissioner,* 928 F.2d 751, 762 (6th Cir.1991).

## III. DISCUSSION

◼ In order to qualify for relief from taxation under the innocent spouse statute the qualifying spouse must meet a four-pronged test. Section 6013(e)(1). Failing to establish any one of the four elements prevents a spouse from qualifying for relief. *Id.* If the test is satisfied, he or she will be relieved of liability for tax (including interest, penalties, and other amounts), to the extent that such liability is attributable to the substantial understatement (or erroneous deduction) by the guilty spouse. *Id.* Here, the parties stipulated, or the tax court found, that Nancy had satisfied three parts of the four-pronged test. *Silverman v. Commissioner,* 71 T.C.M. (CCH) 2127, 2138, 1996 WL 70304 (1996). First, Nancy filed a joint return with Sheldon for 1981. *Id.;* section 6013(e)(1)(A). Second, the understatement of tax for 1981 was substantial. *Id.;* section 6013(e)(1)(B). In addition, it was attributable to Sheldon's (not Nancy's) grossly erroneous deduction.[2] *Id.* Third, when the 1981

---

1. Nancy owned $1,600,000 in life insurance on Sheldon's life and received jointly-held assets.

2. Nancy also satisfied two subparts of the second prong: (1) the substantial understatement was

attributable to a deduction that had no basis in fact or law, section 6013(e)(2)(B), and, (2) the tax liability for the erroneous deduction exceeded the

return was signed, Nancy did not know, and had no reason to know, of the substantial understatement of tax. *Id.* at 2137–38; section 6013(e)(1)(C).

█ Only the fourth prong is in dispute. That is, taking into account all facts and circumstances, whether it is inequitable to hold Nancy liable for the 1981 tax deficiency generated by Sheldon's erroneous tax shelter deduction. *Id.* at 2138; section 6013(e)(1)(D). The Commissioner contends that it would not be inequitable to hold Nancy liable for the 1981 deficiency because of the financial benefits Nancy received from Sheldon. The Commissioner argues that the erroneous deduction "freed up" a portion of Sheldon's 1981 withheld taxes (the 1982 refund for 1981). These freed up funds were offset against the Silverman's joint 1980 tax liability. The Commissioner claims that, therefore, even though the 1988 refund for 1980 that Nancy received was not in any way based upon the erroneous deduction taken by Sheldon, it was, nevertheless, larger than it would have been if Sheldon hadn't taken the erroneous deduction. In rebuttal, Nancy contends that a spouse is disqualified for relief under section 6013(e) only where the alleged benefit is derived from and traceable to the omitted income (or erroneous deduction). Treas. Regs. § 1.6013–5(b). Nancy claims that the 1988 refund for 1980 "had absolutely no relationship to the 1981 tax year."

Starting with the proposition that exemptions from taxation are to be narrowly construed, and place a significant burden on the taxpayer, *id.* at 2135 (citations omitted), the tax court found Sheldon to be a "guilty spouse" who concealed the truth from Nancy. *Id.* at 2138. It also found that Nancy did not significantly benefit from the 1982 refund for 1981 or the avoided payments of 1981 [3] as her lifestyle did not change on

account of the receipt of these two items. *Id.* at 2139. The tax court noted that throughout their marriage, Nancy and Sheldon had maintained a comfortable lifestyle easily supported by Sheldon's earnings. *Id.* It reasoned, therefore, that because Sheldon had made a considerable amount of money during his lifetime, the 1982 refund for 1981 and the avoided payments for 1981 were normal support, unrelated to the tax savings produced by the State Coal deduction. *Id.* Hence, the tax court found that the 1982 refund for 1981, as well as the avoided payments of 1981, did not disqualify Nancy from innocent spouse status as she did not receive a significant benefit from either. *Id.*

Stating that "[i]f our analysis were to end at this point, then we would conclude that it is inequitable to hold Nancy liable for the 1981 deficiency in tax," the tax court went on to find, however, that it was *not* inequitable to hold Nancy liable, because the *1988 refund for 1980* that she had received *was* a significant benefit to her: [4]

However, Nancy directly received a [$55,000] benefit from the tax savings produced by the State Coal royalty deduction. The [1988 refund for 1980] received by Nancy in the amount of [$129,000], included [$55,000] of Sheldon's withheld income tax for 1981 (plus the interest thereon), which amount would not have been available for transfer to the 1980 tax year if the State Coal royalty deduction had not created the [$185,000] tax saving for 1981. We consider this to be a significant benefit. Thus, Nancy received a significant benefit on account of the grossly erroneous item.

In light of the foregoing, we conclude, and we have found, that it is not inequitable to hold Nancy liable for the deficiency. *Id.*

█ We disagree. This is a very narrow reading of a remedial statute. The innocent

---

3. Without the erroneous State Coal deduction, the Silvermans would have withheld more taxes for 1981. This larger amount of withheld taxes, minus the amount of taxes actually withheld (with the erroneous State Coal deduction), equals the amount of "avoided payments."

required percentage of Nancy's income for the 1988 preadjustment year. Section 6013(e)(4).

4. As we find that the tax court clearly erred in its determination that Nancy was not an innocent spouse, we do not reach her argument that the 1988 refund for 1980 belonged, not to her, but to Sheldon's estate.

spouse provision should be construed and applied liberally in favor of those for whom it was designed to protect. *See Friedman v. Commissioner,* 53 F.3d 523 (2d Cir.1995), *aff'g* in part, *rev'g* in part, 66 T.C.M. (CCH) 1404, 1993 WL 482882 (1993); *see Perry v. Commissioner,* 63 T.C.M. (CCH) 2924, 2925, 1992 WL 90620 (1992); *see Allen v. Commissioner,* 514 F.2d 908 (5th Cir.1975), *aff'g* in part, *rev'g* in part, 61 T.C. 125, 1973 WL 2544 (1973).

Section 6013(e) was liberalized by the Deficit Reduction Act of 1984 (DEFRA) to remove 1971 language that an innocent spouse must not have "significantly benefitted, directly or indirectly" from the omitted income.[5] P.L. No. 98–369, 98 Stat. 494, § 424 (1984). The DEFRA amendment provides that, *taking into account all the facts and circumstances,* if it would be inequitable to hold an innocent spouse liable, the statute will provide relief. *Id.*[6] Although the significant benefit requirement has been removed from the statute, the tax court has continued to consider it as one of the relevant factors in determining the equities of a case. *See Purcell v. Commissioner,* 826 F.2d 470 (6th Cir. 1987), *aff'g* 86 T.C. 228, 1986 WL 22087 (1986); *see however Busse v. United States,* 542 F.2d 421, 427 (7th Cir.1976) (a pre-DEFRA case holding that, notwithstanding a finding of significant benefit, innocent spouse relief is still available if it remains inequitable to hold the spouse liable for the tax).

After DEFRA, a significant benefit analysis must yield to a facts and circumstances analysis. Here the proper standard now requires a careful consideration of all possible factors that are relevant to whether it would be inequitable to hold Nancy liable. *See Clevenger v. Commissioner,* 826 F.2d 1379 (4th Cir.1987). The benefit to Nancy as a result of the erroneous deduction is only one factor to be considered. *Id.* at 1382.

Here the tax court ignores a virtual litany of other equitable facts and circumstances either stipulated to by the parties or described in its own findings of fact. It attempts to trace, directly or indirectly, the significant benefit to Nancy of the erroneous State Coal royalty deduction through a myriad of unrelated years and unrelated refund claims.

In looking at 1981, the actual year of the erroneous deduction, the tax court found that "Nancy's lifestyle did not change on account of the receipt of the [1982 refund for 1981] and the [$55,000] avoided payment," hence, the receipt of those two items was an insignificant benefit, or, normal support. Yet it continues on to find that the 1988 refund for 1980 *was* a significant benefit to Nancy, causing her to fail the fourth and final equity prong. This is clearly erroneous.

Taking into account all these facts and circumstances, we conclude that any alleged benefit to Nancy is so attenuated that it causes no weight, significant or otherwise, to be placed upon the equity scale. To base liability upon a 1988 refund for 1980, is to seize upon a serendipitous happenstance not contemplated by the taxpayer or the Commissioner when the alleged benefit materialized. More than adequate time has been spent searching for a non-existent inequity. Accrued interest on the deficiency has quadrupled over the years. Under these facts and circumstances, the equity in this case is in Nancy's favor. She qualifies for innocent spouse status under section 6013(e) as one of the parties the statute was designed to protect.

**5.** Prior to the enactment of Section 6013(e) in 1971, strict liability was imposed upon a spouse for all tax liabilities arising on a joint return. *Louise M. Scudder v. Commissioner,* 48 T.C. 36, 41, 1967 WL 1310 (1967) (finding the innocent spouse liable for taxes on the joint return but deploring the law that required that result). Section 6013(e) was enacted "to bring government tax collection practices into accord with basic principles of equity and fairness." S.Rep. No. 1537, 91st Cong., 2d Sess. 2, *reprinted in* 1970 U.S.C.C.A.N. 6089, 6091.

**6.** Section 6013(e) was amended in 1984 due to Congressional concern that it was phrased too narrowly. The House Committee Report found that the 1971 legislation was not sufficiently broad enough to encompass many cases where the innocent spouse deserved relief. H.R.Rep. No. 98–432, Part II, 98th Cong., 2d Sess. 1502, *reprinted in* 1984 U.S.C.C.A.N. 697, 1143–4.

## IV. CONCLUSION

The decision of the tax court is reversed. REVERSED.