Herbert L. MITCHELL, et al. Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Appellee

No. 01–1045.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 2001.

Decided June 14, 2002.

Richard B. Treanor argued the cause and filed the briefs for appellants.

Joan I. Oppenheimer, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was David English Carmack, Attorney.

Before: SENTELLE and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This case is before us on appeal by the taxpayer from a decision of the Tax Court denying "innocent spouse" relief under 26 U.S.C. § 6015. We affirm that decision for the reasons that follow.

## I. Background

The facts necessary to this decision are not in dispute. *See Mitchell v. Commissioner*, 80 T.C.M. (CCH) 590, 2000 WL 1595695 (2000). Appellant Ella Marie Mitchell was married to Herbert L. Mitchell for many years before his death in 1992. In 1991, Mr. Mitchell received a distribution from the Teacher's Retirement System of the State of Maryland in two checks dated June 30, 1991 totaling $666,564.51. He also received two form 1099–R information returns aggregating the total and showing $629,083.14 of it as taxable, and the parties stipulated that amount was taxable. Mr. Mitchell did not roll over the distribution into an individual retirement account or other exempt trust or arrangement. He purchased Treasury securities with the distribution.

After Mr. Mitchell's sudden death in March 1992, Mrs. Mitchell filed a joint return for 1991. The return as filed with

the Internal Revenue Service ("IRS") reported the entire $666,564.51 gross distribution to Mr. Mitchell accurately, but reported that only $1,083.14 was taxable. In explanation, an attachment claimed, accurately, $39,633.27 in employee contributions and, inaccurately, $628,000.00 as an excluded rollover into a qualified plan.[1] As a matter of fact, there was no effective rollover. The IRS determined a deficiency, and in due course Mrs. Mitchell appeared in the Tax Court, seeking "innocent spouse" relief under 26 U.S.C. § 6015.

The Tax Court found as fact that Mrs. Mitchell did know of the receipt, amount, and nature of the distribution to Mr. Mitchell but that she did not know that its treatment on the 1991 return was incorrect. Relying upon his finding of Mrs. Mitchell's knowledge and on the Tax Court's decision in *Cheshire v. Commissioner*, 115 T.C. 183, 2000 WL 1227132 (2000), *aff'd*, 282 F.3d 326 (5th Cir.2002), the presiding judge held that Mrs. Mitchell was not entitled to relief under either of subsections (b) or (c) of 26 U.S.C. § 6015. *Mitchell*, 80 T.C.M. at 593. In addition, the judge held that the IRS had not abused its discretion in denying equitable relief under 26 U.S.C. § 6015(f). *Mitchell*, 80 T.C.M. at 594. Mrs. Mitchell, a resident of the District of Columbia, appealed to this court. 26 U.S.C. § 7482(a)(1).

## II. Analysis

A. *Subsection (b) Relief, 26 U.S.C. § 6015(b)*

There are three grounds for relief under section 6015, set out respectively in subsections (b), (c), and (f) thereof. Mrs. Mitchell sought relief under each, and we address each in turn.

Subsection (b) provides in pertinent part:

Under procedures prescribed by the Secretary, if—

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

26 U.S.C. § 6015(b)(1). The parties agreed that subparagraphs (A) and (E) were satisfied, but the IRS contested (B), (C), and (D). The Tax Court decided the issue on the basis that subparagraph (C) was not satisfied because of Mrs. Mitchell's knowledge of the facts, and therefore did not address subparagraphs (B) and (D).

█ We find no error in the Tax Court's determination of this issue. The Tax

1. We note that the taxable amount shown on the forms 1099–R exceeds the gross distribu-

tion less contributions, but there is no issue before us relating to the taxable amount.

Court found as fact that, although Mrs. Mitchell did not know the tax consequences, she did know that her husband had received the distribution from the retirement system, when he had received it, the amount of the distribution, and what he had done with it. It was she who informed the tax return preparer that Mr. Mitchell had not rolled over the funds and provided accurate forms 1099–R to the preparer. (There was some indication in the record that the distribution could not have been rolled over in any event, but that is irrelevant as neither Mr. Mitchell nor Mrs. Mitchell attempted a rollover within any otherwise applicable time period.) Accordingly, it is clear that she knew every fact necessary to determine that the distribution, less Mr. Mitchell's investment, was fully taxable and not excludable. Thus, although the Tax Court found she did not know in fact of any understatement, the facts that she did know gave her "reason to know" of the understatement of tax on the 1991 joint return within the meaning of 26 U.S.C. § 6015(b)(1)(C).

Our holding on this point, although apparently one of first impression in this circuit, is consistent with the holdings of other circuits under current subparagraph (b)(1)(C), see Cheshire v. Commissioner, 282 F.3d 326, 332–35 (5th Cir.2002), and under its predecessor, 26 U.S.C. § 6013(e)(1)(C). See Buchine v. Commissioner, 20 F.3d 173, 180–81 (5th Cir.1994); Bokum v. Commissioner, 992 F.2d 1132, 1133–35 (11th Cir.1993); Clevenger v. Commissioner, 826 F.2d 1379, 1382 (4th Cir.1987); Shea v. Commissioner, 780 F.2d 561, 566–67 (6th Cir.1986). The current version differs from its predecessor only in the replacement of the former "spouse" by the current "individual filing the joint return" and of the former "substantial underpayment" by the current "underpayment" simpliciter. Accordingly, decisions interpreting the former subparagraph 6013(e)(1)(C) that do not turn on these differences remain persuasive, if not controlling, under the current subparagraph 6015(b)(1)(C). Butler v. Commissioner, 114 T.C. 276, 283, 2000 WL 502841 (2000). Cf. Madley v. U.S. Parole Comm'n, 278 F.3d 1306, 1309 (D.C.Cir. 2002) (same re: 28 U.S.C. § 2253).

■ Mrs. Mitchell observes that many of these cases are so-called omitted income cases applying what is called the "knowledge of the transaction" test. She contends that we should instead follow the Ninth Circuit's decision in Price v. Commissioner, 887 F.2d 959 (9th Cir.1989), and its progeny, which she argues employ a different standard of knowledge in innocent spouse cases involving erroneous deductions. Fundamentally the standard for which Mrs. Mitchell argues is that her lack of knowledge of the tax consequences of the income received, or of its proper treatment on the return, establishes that she did not have reason to know of the underpayment. No decision, not even Price, has gone that far. Price itself expressly stated that it was not addressing an ignorance of law defense. The Price court opened its discussion of whether the claimant there "had reason to know" with the following:

Of itself, ignorance of the attendant legal or tax consequences of an item which gives rise to a deficiency is no defense for one seeking to obtain innocent spouse relief. In [Bernadette P. Price v. Commissioner, 53 T.C.M. (CCH) 1414, 1987 WL 40413 (1987)], for example, the tax court denied "innocent spouse" protection to a joint return taxpayer who admitted she knew about unreported funds her husband had embezzled despite the fact she did not know that embezzled funds constitute taxable income. [Bernadette P.] Price, 53 T.C.M. at 1416. Thus, if a spouse knows virtually all of the facts pertaining to the transaction which underlies the substan-

tial understatement, her defense in essence is premised solely on ignorance of law. *Id.* In such a scenario, *regardless of whether the spouse possesses knowledge of the tax consequences* of the item at issue, she is considered as a matter of law to have reason to know of the substantial understatement and thereby is effectively precluded from establishing to the contrary.

Here, while the tax court properly concluded that Patricia [Price, no relation to Bernadette] knew certain facts about the CCM investment [for which her husband claimed an erroneous deduction], it cannot be said that Patricia was so intimately involved with the investment such that she knew virtually all of the facts of the transaction underlying the deduction, leaving her no option but to rely solely upon ignorance of law as a defense and therefore leaving us no option but to conclude that she had reason to know of the understatement. Because Patricia's ignorance extends beyond the legal consequences of the deduction, we proceed to determine on the facts before us whether Patricia had reason to know that the return contained a substantial understatement.

887 F.2d 959, 964–65 (9th Cir.1989) (citations omitted) (emphasis added). On the facts before us, however, it is perfectly clear that Mrs. Mitchell knew every fact necessary to determine the legal consequences of the income, and that her defense is simply that she did not know those consequences. We hold that Mrs. Mitchell's complete factual knowledge gave her reason to know of the underpayment within the meaning of subparagraph 6015(b)(1)(C). Nothing in *Price* undermines our determination. Ignorance of the law, standing alone, as it does here, is not a defense under any test. *Accord Cheshire,* 282 F.3d at 335.

**B.** *Subsection (c) Relief, 26 U.S.C. § 6015(c)*

Unlike subsection (b), subsection (c) has no statutory antecedent. Together with the revisions of former subsection 6013(e) enacted as 6015(b) and new subsection (f), subsection (c) was enacted in 1998 to liberalize and expand innocent spouse relief. *Cheshire,* 115 T.C. at 189. Subsection (c) provides relief to eligible electing taxpayers by allocating any deficiency relating to the joint return between the spouses much as though they had filed separately. 26 U.S.C. § 6015(c)(1), (d)(3)(A). The Tax Court did not consider this mechanism, however, because it determined that an exception barred such relief for Mrs. Mitchell. *Mitchell,* 80 T.C.M. at 593–94. That exception is as follows:

> If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

26 U.S.C. § 6015(c)(3)(C). The burden of proof under this subparagraph is on the IRS. 26 U.S.C. § 6015(c)(2). The distribution in question is "not allocable" to Mrs. Mitchell under subsection (d), and the parties stipulated that Mrs. Mitchell is deemed to have made any necessary elections. There is no question of duress involved. The only question is whether the IRS has shown that Mrs. Mitchell "had actual knowledge, at the time [she] signed the [1991] return, of any item giving rise to a deficiency." 26 U.S.C. § 6015(c)(3)(C).

The Tax Court found as fact that Mrs. Mitchell knew that Mr. Mitchell had received the distribution, when he received it, its amount, and how he invested it. *See* Part II.A, *supra*. She also knew when she sold the Treasury securities her husband had purchased with the distribution and deposited the proceeds in individual retirement and other accounts. As to her lack of knowledge, the Tax Court found only that she did not know the tax consequences of these acts. We hold that the knowledge that she had was actual knowledge of the "item giving rise to a deficiency," within the meaning of the statute. 26 U.S.C. § 6015(c)(3)(C).

In so holding, we have considered and rejected Mrs. Mitchell's argument that the proper interpretation of the statutory phrase "actual knowledge * * * of any item giving rise to a deficiency" is that knowledge is required, not just of the item, but of deficiency causation—knowledge that the item caused a deficiency in whole or in part. Mrs. Mitchell has not persuaded us that this is the interpretation Congress intended. First, it is a strained interpretation of the sentence read as a whole. It depends for its force on treating the entire phrase "any item giving rise to a deficiency" as the indivisible object of knowledge. The more natural reading of the sentence is that it refers to a person who has knowledge of an *item*, and that that item gives rise to a deficiency without regard to whether the person who knows of the item knows of that consequence. Not only is Mrs. Mitchell's proposed interpretation semantically awkward, it is unlikely that Congress would have employed such subtle and ambiguous phrasing to overrule the well-established principle that ignorance of tax law is not a defense to liability. *E.g., Hayman v. Commissioner*, 992 F.2d 1256, 1261–63 (2d Cir.1993); *Bokum*, 992 F.2d at 1134–35; *Price*, 887 F.2d at 964–66 (finding of legal ignorance not sufficient for relief; other facts consid-

ered); *Purcell v. Commissioner*, 826 F.2d 470, 473–74 (6th Cir.1987), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988); *McCoy v. Commissioner*, 57 T.C. 732, 734, 1972 WL 2489 (1972).

Mrs. Mitchell protests that one can not know of an "item" unless one knows its tax treatment. Thus, by not knowing the tax consequences, she did not know the distribution was an "item" within the meaning of subsection 6015(c). Although the Internal Revenue Code is full of definitions, including definitions in subsection (c) itself, definitions that use the word *item*, and definitions of various types of items, what constitutes an *item* itself is nowhere defined. Mrs. Mitchell contends it is defined circumstantially by its consistent usage as something with tax consequences. This may well be true, but if so it appears utterly unremarkable, given the generality of the term and the purposes of the Internal Revenue Code. What would be remarkable would be for Congress to rely upon such an obscure and imprecise device to make ignorance of law a defense to voluntarily incurred joint and several liability. *Cf. Cheshire*, 282 F.3d at 335–37 (dismissing substantially similar argument). Nothing in the plain language of the statute compels such a result, nor suggests that to know of an item, one must understand its legal significance.

Finally, in this regard, Mrs. Mitchell contends that Congress implied a requirement of knowledge of the tax consequences by referring to *"knowledge, at the time such individual signed* the return, of any item." 26 U.S.C. § 6015(c)(3)(C) (emphasis added). Mrs. Mitchell submits, in effect, that the emphasized phrase, focusing as she believes it does on a particular time, and not before, shows congressional concern with the electing individual's state of mind when it is likely most focused on the tax consequences of the return. Again, we

conclude that Mrs. Mitchell has offered an implausible argument. We interpret the emphasized language as simply limiting the time after which acquisition of knowledge is irrelevant.

Our interpretation of the knowledge requirement of subparagraph (c)(3)(C) does not deprive this new provision of force. Mrs. Mitchell is correct that Congress intended to expand the scope of innocent spouse relief. Subsection (c) does so in several ways, including requiring proof of actual knowledge of an item, not just reason to know, and putting that heavy burden on the IRS. Even as we interpret subsection (c), it is a material liberalization of the former subsection 6013(e) test, carried forward with its own lesser liberalizations in subsection (b).

■ For the reasons given, we hold that subparagraph 6015(c)(3)(C) does not require the IRS to show that an individual seeking subsection (c) relief had actual knowledge of the improper tax treatment of an item with respect to which the individual seeks relief, and that Mrs. Mitchell's actual knowledge of the receipt, amount, timing, nature, and use of the distribution bars her from such relief notwithstanding her ignorance of its proper tax treatment.

C. *Subsection (f) Relief, 26 U.S.C. § 6015(f)*

Mrs. Mitchell also seeks the third and last form of relief under section 6015, subsection (f) equitable relief. Subsection (f) provides in full as follows:

Under procedures prescribed by the Secretary, if—

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c), the Secretary may relieve such individual of such liability.

26 U.S.C. § 6015(f). Subsection (f) has no statutory antecedent as a stand alone provision, but has roots in the equity test of former subparagraph 6013(e)(1)(D) carried forward into subparagraph 6015(b)(1)(D). The roots of this provision also include a Treasury regulation promulgated in support of that subparagraph:

(b) Inequitable defined. Whether it is inequitable to hold a person liable for the deficiency in tax, within the meaning of paragraph (a)(4) of this section, is to be determined on the basis of all the facts and circumstances. In making such a determination a factor to be considered is whether the person seeking relief significantly benefitted, directly or indirectly, from the items omitted from gross income. However, normal support is not a significant "benefit" for purposes of this determination. Evidence of direct or indirect benefit may consist of transfers of property, including transfers which may be received several years after the year in which the omitted item of income should have been included in gross income. Thus, for example, if a person seeking relief receives from his spouse an inheritance of property or life insurance proceeds which are traceable to items omitted from gross income by his spouse, that person will be considered to have benefitted from those items. Other factors which may also be taken into account, if the situation warrants, include the fact that the person seeking relief has been deserted by his spouse or the fact that he has been divorced or separated from such spouse.

Treas. Reg. § 1.6013–5(b) (promulgated 1974). (The referenced paragraph (a)(4) is simply a concise restatement of the statutory equity test.) The applicability of parts of the regulation have been eroded

by subsequent statutory changes, particularly the 1984 expansion of innocent spouse relief to deduction items, but the regulation never has been withdrawn and this portion has provided some guidance to the IRS in using its discretion under subsection (f) pending development of newer resources. *See* I.R.S. Notice 98–61, 1998–2 C.B. 756, 757, 1998 WL 858240 (referencing quoted provision).

■ As the decision whether to grant this equitable relief is committed by its terms to the discretion of the Secretary, the Tax Court and this Court review such a decision for abuse of discretion. *See Flores v. United States*, 51 Fed.Cl. 49, 51 & n. 1 (2001); *Butler*, 114 T.C. at 291–92. We conclude that there was no such abuse, for the reasons given by the Tax Court in its decision:

> In this case, petitioner significantly benefitted from the omitted income. Among other things, she made repairs and improvements to her residence; she paid down the mortgage; she paid her and Mr. Mitchell's medical bills; and she paid her children's loans and college expenses. She also established a trust for her children in the amount of $132,000. Her spending over the 3 years 1992 through 1994, including the trust fund, totaled more than $570,000. In short, she used the money from the transfer refund to the considerable benefit of herself and her family. These expenditures, while no doubt generous and well intentioned, nevertheless indicate the receipt of income far in excess of that previously available as normal support. We therefore conclude that respondent did not abuse his discretion in denying petitioner relief under section 6015(f).

*Mitchell*, 80 T.C.M. at 594 (citations omitted). This determination is supported by appropriate findings of fact, none of which Mrs. Mitchell has challenged. The use of the "significant benefit" test in this context

is well established. *Silverman v. Commissioner*, 116 F.3d 172, 174–75 (6th Cir.1997); *Reser v. Commissioner*, 112 F.3d 1258, 1270 (5th Cir.1997); *Purificato v. Commissioner*, 9 F.3d 290, 293–95 (3d Cir.1993); *Pietromonaco v. Commissioner*, 3 F.3d 1342, 1347–48 (9th Cir.1993); *Clevenger*, 826 F.2d at 1382; *Estate of Gryder v. Commissioner*, 705 F.2d 336, 339 (8th Cir. 1983) (benefit by inheritance of proceeds of omitted income); *Busse v. United States*, 542 F.2d 421, 427 (7th Cir.1976); *Sanders v. United States*, 509 F.2d 162, 170–71 (5th Cir.1975); *Dakil v. United States*, 496 F.2d 431, 433 (10th Cir.1974). The arguments that Mrs. Mitchell makes in opposition to the determination of the IRS and affirmation of the Tax Court are without merit. In particular, she first argues that there was no "significant benefit" to her because the expenditures of the distribution funds were only normal support, payment of obligations of her husband, or both. Despite her characterization of the nature of her expenditures, the facts found by the Tax Court concerning the expenditures during 1992–1994 as stated above amply support a conclusion that she significantly benefitted. It is hardly erroneous to style those facts as "significant benefit."

Mrs. Mitchell's next argument, that she had "suffered from the sudden death of her husband and it would be doubly inequitable to hold her responsible for taxes attributable to her husband's income," is also unavailing. The loss of her spouse is not only not the sort of circumstance that makes it inequitable to collect tax, it is a normal condition of many of the taxpayers covered by the provisions of the innocent spouse rule. The loss of one's husband or wife, even a sudden loss, is a sad but normal condition of life. *Cf. Purificato*, 9 F.3d at 297 (rejecting personal tribulations in considering inequity under the innocent spouse exception). The widowed, even the recently widowed, pay various sorts of tax-

es. This is generally thought no more inequitable to them than to other taxpayers. Presumably Congress could exempt from specified provisions of the Tax Code the recently or suddenly bereaved, but it has not done so in the provisions that we consider today.

While the taxpayer raises other arguments, we have considered them and determine that none warrants further separate discussion. In short, appellant has not established that the IRS abused its discretion in denying equitable relief.

### III. Conclusion

For the reasons set forth above, the judgment of the Tax Court is affirmed.

*Judgment accordingly.*