T.C. Summary Opinion 2003-10

UNITED STATES TAX COURT

KATHLEEN PATRICIA PETERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4854-01S.                    Filed February 11, 2003.

<u>Jonathan P. Decatorsmith</u>, for petitioner.

<u>Sean R. Gannon</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes of $4,092 and $6,972, and accuracy-related penalties of $818.40 and $1,394.40, for the taxable years 1997 and 1998.

The issue for decision is whether petitioner is entitled to full or partial relief from joint and several liability under section 6015 for the deficiencies and penalties determined by respondent.[1]

<u>Background</u>

Some of the facts have been stipulated and are so found. The stipulations of fact and those attached exhibits which were admitted into evidence are incorporated herein by this reference. Petitioner resided in Buffalo Grove, Illinois, on the date the petition was filed in this case.

Petitioner has a high school education. Over the years she has worked in a variety of areas, including retail sales, bartending, and secretarial work. During the years in issue, she was employed on a part-time basis by several employers, including a bed and breakfast, an eye doctor, and a law office. Petitioner earned approximately $6,000 in 1997 and approximately $10,000 in

---

[1]Petitioner does not challenge respondent's determinations in the notice of deficiency concerning the underlying deficiencies.

1998. At that time, petitioner was also receiving child support from her son's father.

Petitioner and her former husband, William K. Elesh, were married in 1991. Shortly after marrying Mr. Elesh, petitioner moved with him from Illinois to Wisconsin. During their marriage, petitioner and Mr. Elesh maintained separate bank accounts and credit cards, and petitioner was not included in any of the financial matters conducted by Mr. Elesh, such as the purchase of their family home. During the years in issue, Mr. Elesh was an engineer and was employed as an executive, earning approximately $100,000 per year. Petitioner was responsible for purchasing certain household needs, such as groceries and landscaping items. Petitioner would use her own earnings and the child support payments for these expenses, and on occasion she would also charge the expenses to credit cards which she was responsible for paying. However, Mr. Elesh occasionally would reimburse her for some of these expenses and make payments on her credit cards. He also provided petitioner with a car, and he routinely paid for certain household expenses such as the mortgage, utilities, and car insurance. Petitioner did not make any charitable contributions in either 1997 or 1998, and she was unaware if Mr. Elesh made any such contributions. During the years in issue, Mr. Elesh owned a residential rental unit in Buffalo Grove, Illinois, which he rented to petitioner's

daughter. He purchased the unit with proceeds from the sale of another property he had previously owned. Petitioner and Mr. Elesh were divorced in late 1999.

For each of the years in issue, petitioner filed a joint Federal income tax return with Mr. Elesh. The returns were prepared by Donahue's Accounting & Tax Service. The return preparer was hired by Mr. Elesh, and petitioner had little or no contact with him. Although petitioner did not review the tax returns for the years in issue, she signed both of them. Petitioner and Mr. Elesh claimed deductions for charitable contributions made in cash of $8,574 in 1997 and $8,765 in 1998. They also deducted losses from the rental property occupied by petitioner's daughter of $14,047 in 1997 and $15,632 in 1998. In the statutory notice of deficiency, respondent disallowed the claimed cash charitable contribution deductions because they were not "verified as paid".[2] Respondent disallowed a portion of the 1997 rental loss deduction and the entire 1998 rental loss deduction based on their status as passive activity losses. In addition, respondent determined that petitioner and Mr. Elesh were liable for accuracy-related penalties under section 6662(a) with respect to the entire amount of the underpayments in 1997 and 1998.

---

[2]Petitioner and Mr. Elesh also claimed noncash charitable contribution deductions of $485 in 1997 and $490 in 1998. These deductions were not disallowed by respondent.

## Discussion

Spouses who file a joint Federal income tax return generally are jointly and severally liable for the payment of the tax shown on the return or found to be owing.  Sec. 6013(d)(3); <u>Cheshire v. Commissioner</u>, 115 T.C. 183, 188 (2000), affd. 282 F.3d 326 (5th Cir. 2002) ("Cheshire I").  However, relief from joint and several liability is available to certain taxpayers under section 6015.  There are three avenues for relief under this section-- section 6015(b), section 6015(c), and section 6015(f).

### Section 6015(b) Relief

Section 6015(b) provides full or apportioned relief from joint and several liability for an understatement of tax on a joint return if, among other requirements, the taxpayer requesting relief "establishes that in signing the return he or she did not know, and had no reason to know" of the understatement of tax on the return.  Sec. 6015(b)(1)(C), (b)(2). Generally, the spouse seeking relief has reason to know of the understatement if she has reason to know of the transaction that gave rise to the understatement.  <u>Jonson v. Commissioner</u>, 118 T.C. 106, 115 (2002).  However, the Court of Appeals for the Seventh Circuit[3] has adopted what has been labeled a more lenient

---

[3]But for the provisions of sec. 7463(b), the decision in this case would be appealable to the U.S. Court of Appeals for the Seventh Circuit.  See sec. 7482(b)(1)(A).  This Court generally applies the law in a manner consistent with the
(continued...)

approach in cases involving erroneous deductions (versus cases involving omission of income). Id. at 115-116. That court has stated that a spouse is entitled to relief from joint liability where she establishes "that she did not know and did not have reason to know that the deduction would give rise to a substantial understatement." Resser v. Commissioner, 74 F.3d 1528, 1536 (7th Cir. 1996), revg. and remanding T.C. Memo. 1994-241 (quoting Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989), revg. an Oral Opinion of this Court).[4] The court went on to state:

> When evaluating whether the taxpayer had reason to know, the circuits agree that a court must follow an objective "reasonable taxpayer" standard: A spouse has "reason to know" if a reasonably prudent person, under the circumstances of the taxpayer claiming innocent spouse relief, could be expected to know, at the time of signing the return, that the tax return contained a substantial understatement or that further investigation was warranted. * * * "Hence, the court's analysis must focus on whether the spouse had sufficient knowledge of the facts underlying the

---

[3](...continued)
holdings of the Court of Appeals to which an appeal of its decision lies, see Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), even in cases subject to sec. 7463(b).

[4]The court in Resser was interpreting former sec. 6013(e), which was repealed and replaced with current sec. 6015 by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 685, 734. Sec. 6015(b) does not contain the requirement of former sec. 6013(e) that the understatement be "substantial". Despite this and other minor differences between the two provisions, Resser and other cases interpreting former sec. 6013(e) remain instructive in analyzing cases under sec. 6015(b). Butler v. Commissioner, 114 T.C. 276, 283 (2000).

claimed deductions such that a reasonably prudent person in the taxpayer's position would question seriously whether the deductions were phony."

Id. (quoting Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63).  Factors relevant in this analysis include the taxpayer's level of education, the taxpayer's involvement in her family's financial activities, any substantial unexplained increase in the family's standard of living, and evasiveness and deceit by the taxpayer's spouse concerning the family's finances.  Id.

Regardless of the standard used in analyzing whether a taxpayer had reason to know of an understatement, it is well settled that ignorance of the law is not a defense for a taxpayer seeking section 6015 relief.  Mitchell v. Commissioner, 292 F.3d 800, 803-806 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332; Cheshire v. Commissioner, 282 F.3d 326, 333-335 (5th Cir. 2002), affg. 115 T.C. 183 (2000) ("Cheshire II"); Price v. Commissioner, supra at 964.  Where a taxpayer knows "virtually all of the facts of the transaction underlying the deduction," she is left with "no option but to rely solely upon ignorance of law as a defense".  Price v. Commissioner, supra at 964.  Consequently, regardless of whether the taxpayer "possesses knowledge of the tax consequences of the item at issue, she is considered as a matter of law to have reason to know of the substantial

understatement and thereby is effectively precluded from establishing to the contrary." Id.

Petitioner is not entitled to relief from joint and several liability under section 6015(b). With respect to the disallowed rental loss deductions, we find that petitioner was fully aware of all the underlying factual circumstances concerning the rental of the condominium unit to her own daughter. Petitioner argues that, while she may have known of the rental income, she did not have any knowledge concerning the rental expenses which led to the losses. Contrary to petitioner's assertion, the disallowed loss deductions were the result of the application of the section 469 passive activity loss rules, not the claimed expense deductions--respondent has not challenged the legitimacy of the expenses themselves. Thus, petitioner's request for relief essentially is based upon ignorance of the law; namely, ignorance of the passive activity loss limitations of section 469. Ignorance of the law is not a basis for section 6015(b) relief. Mitchell v. Commissioner, supra; Cheshire II, supra; Price v. Commissioner, supra.

With respect to the disallowed charitable contribution deductions, petitioner did not make a significant contribution herself, she was unaware of a single contribution made by Mr. Elesh, and her characterization of Mr. Elesh at trial was of someone very unlikely to make such large cash contributions.

Thus, petitioner had "sufficient knowledge of the facts underlying the claimed deductions such that a reasonably prudent person in the taxpayer's position would question seriously whether the deductions were phony." Resser v. Commissioner, supra at 1536 (quoting Stevens v. Commissioner, supra at 1505). Although petitioner had only a high school education and was not involved in Mr. Elesh's finances, we find that under the circumstances of this case her education and involvement with the finances would not have been a factor in concluding that the large amount of cash charitable contributions reported on the return had not been made.

Section 6015(c) Relief

Section 6015(c) provides proportionate relief through allocation of a deficiency between individuals who filed a joint return and who are no longer married, who are legally separated, or who have been living apart for the preceding 12 months. Among other limitations, relief under section 6015(c) with respect to an item giving rise to a deficiency is not available to a taxpayer who had actual knowledge of the relevant item giving rise to the deficiency or portion thereof. Sec. 6015(c)(3)(C). In the context of a disallowed deduction, actual knowledge is present if the taxpayer had actual knowledge of the factual circumstances which made the item unallowable as a deduction. King v. Commissioner, 116 T.C. 198, 204 (2001). Knowledge of the

tax consequences resulting from the factual circumstances is not required.  Id. at 203-204.  Respondent bears the burden of proving that the taxpayer requesting section 6015(c) relief had the relevant actual knowledge.  Sec. 6015(c)(3)(C); King v. Commissioner, supra at 204.[5]

With respect to the disallowed rental loss deductions, petitioner is not entitled to relief from joint and several liability under section 6015(c).  As discussed above, petitioner was fully aware of all the underlying factual circumstances concerning the rental of the condominium unit to her own daughter.  See King v. Commissioner, supra.  Consequently, petitioner had actual knowledge of the factual basis for the denial of the deductions, and she cannot rely on ignorance of the law for relief from liability.  Id.; Mitchell v. Commissioner, supra; Cheshire II, supra; Cheshire I, supra at 194-195; Price v. Commissioner, supra.[6]

---

[5]See also sec. 1.6015-3(c)(2)(i)(B)(2), Income Tax Regs. ("If a deduction is fictitious or inflated, the IRS must establish that the requesting spouse actually knew that the expenditure was not incurred, or not incurred to that extent."). This regulation does not apply in the present case because it is effective only with respect to requests for section 6015 relief made on or after July 18, 2002.  Sec. 1.6015-9, Income Tax Regs.

[6]The requirement that a taxpayer not have actual knowledge of an item is eliminated where the taxpayer signs the return under duress.  Sec. 6015(c)(3)(C).  In her trial memorandum, petitioner hints that she was under duress when signing the returns.  For the reasons discussed more fully below, we find that petitioner did not sign the returns under duress.

Petitioner, however, is entitled to section 6015(c) relief with respect to the disallowed charitable contribution deductions. We have accepted petitioner's testimony that she did not read the returns, that she was unaware of the deductions, and that she was not involved in Mr. Elesh's finances. Because respondent has not shown that petitioner actually knew that the claimed deductions were false, respondent has not shown that petitioner had actual knowledge that the disallowed charitable contribution deductions would give rise to a deficiency. Sec. 6015(c)(3)(C); Rowe v. Commissioner, T.C. Memo. 2001-325 (taxpayer entitled to section 6015(c) relief where she did not have actual knowledge of fabricated charitable contribution deductions).

In the context of petitioner's request for section 6015(b) relief, respondent argues that the charitable contribution deductions are "attributable to erroneous items" of both petitioner and Mr. Elesh. See sec. 6015(b)(1)(B). We infer that respondent's position, with respect to section 6015(c) relief, is that the charitable contribution deductions should be allocated to both petitioner and Mr. Elesh. See sec. 6015(c)(1), (d)(3)(A).[7] Petitioner bears the burden of proving that the

---

[7]See also sec. 1.6015-3(d)(2)(iv), Income Tax Regs. (Erroneous deductions "unrelated to a business or investment are also generally allocated 50% to each spouse, unless the evidence shows that a different allocation is appropriate."). See supra
(continued...)

deduction should be allocated to Mr. Elesh.  Sec. 6015(c)(2);

Rowe v. Commissioner, supra.  Under the circumstances of this

case, we find that the record is sufficient to show that the

entire amount of the deductions should be allocated to Mr. Elesh:

While respondent argues that petitioner knew that Mr. Elesh made

cash contributions and that petitioner herself made cash

contributions, the record indicates that no such contributions

were made by either individual.  Because Mr. Elesh alone was

responsible for the deductions, and because petitioner had no

involvement with the preparation of the return, we find that an

allocation entirely to Mr. Elesh is appropriate in this case.

Section 6015(f) Relief

The final avenue for relief under section 6015 is the

equitable relief which may be afforded by section 6015(f).  This

relief is available to taxpayers who are not otherwise entitled

to section 6015 relief if, taking into account all the facts and

circumstances, it is inequitable to hold the taxpayer liable for

any unpaid tax or deficiency (or portion thereof).  Sec.

6015(f)(1) and (2).  Because equitable relief is discretionary,

we review the Commissioner's denial of relief for an abuse of

that discretion.  Cheshire I, supra at 198.  The Commissioner's

exercise of discretion is entitled to due deference; in order to

---

⁷(...continued)
note 5 regarding the applicability of this regulation.

prevail, the taxpayer must demonstrate that in not granting relief, the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1082-1084 (1988).

Because petitioner is entitled to section 6015(c) relief with respect to the charitable contribution deductions, she is not eligible for equitable relief with respect to the resulting deficiencies. Sec. 6015(f)(2). We therefore only address equitable relief with respect to the rental loss deductions.

As directed by section 6015(f), respondent has prescribed procedures in Revenue Procedure 2000-15, 2000-1 C.B. 447, that the Commissioner will consider in determining whether an individual qualifies for relief under that section. Section 4.03 of the revenue procedure lists several nonexclusive factors to be considered in determining eligibility for relief. In denying equitable relief, respondent most heavily relied upon two of these factors--petitioner's knowledge of the facts underlying the rental of the condominium unit to her daughter, and petitioner's receipt of a significant benefit from the understatement of tax.

As discussed above, petitioner had full knowledge of the underlying facts concerning the rental of the condominium unit. Furthermore, she made no effort to review the tax returns or otherwise verify their accuracy prior to signing them. She

argues that "she was expressly prohibited from doing so by her former husband." However, petitioner did not establish that this was the case. She testified at trial:

> He [Mr. Elesh] was very controlling. He was very--Bill is very soft-spoken, but he's very demanding, as far as threatening is concerned. He would threaten me a lot with things that he would shut off, or turn off, or not do. And I was always very worried what was coming next.
>
>       *       *       *       *       *       *       *
>
> He was very paranoid. He was very secretive. He was very cheap, as far as not wanting to spend a dime on this or that. Like I said, if I wanted to buy mulch for underneath the bushes, I had to purchase it. And he would threaten me and say, if I see a bag of mulch in this house, he said, that phone's getting shut off. Or you're not going to pay for any of that food. So if I went to the store to buy a bag of mulch for under the bushes, I had to hide it in my trunk until after he was in bed, then put it under the bush during the day.

Concerning the filing of the tax returns, petitioner testified:

> Year after year, Mr. Elesh would walk in, around the same time, and say, sign this. And he would put it in front of me, he had a file folder. And he would go like this. And he'd say, hurry up, hurry up. Do it now, do it now. Sign it. I have to go; I have to go. And he would always do it when he was on his way to work in the morning.
>
> And I would say, well, why don't you leave it here overnight? Why didn't you leave it here last night when you came home so I can read what this says? And he would never let me look at it or read it. He would--just, do it now, hurry, hurry, hurry, I have to go. Sign it.
>
>       *       *       *       *       *       *       *
>
> He told me that [if I refused to sign] he would turn off the electricity, or turn off the phone, or lots of other things if I didn't do it and do it now.

Although finances and taxes may have been a contentious issue between petitioner and Mr. Elesh, we find that petitioner voluntarily chose not to review the returns prior to signing them. We do not find credible petitioner's testimony that she was significantly pressured by the alleged threats by Mr. Elesh to discontinue telephone or electrical service to his own home. Petitioner testified that she "didn't really have any reason to worry" about the items on the tax returns, and that she "wasn't concerned about them, other than the fact that I know you're supposed to read something before you sign it." In the end, petitioner simply was not sufficiently concerned with the tax returns to review them or to question any items appearing thereon.

Because petitioner had full knowledge of the underlying transaction, and failed to review or otherwise verify the accuracy of the returns prior to signing them, we do not find an abuse of discretion in respondent's denial of equitable relief to petitioner.

## Negligence Penalties

Finally, we turn to the section 6662(a) accuracy-related penalties. This Court has held that:

> it is an abuse of discretion to deny relief under section 6015(f) in an addition to tax or penalty situation when on an individual basis the putative innocent spouse meets the statutory standard generally applied to all taxpayers that shows the addition to tax or penalty is inapplicable.

Cheshire I, supra at 199; see also Rowe v. Commissioner, supra.

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, one of which is negligence or disregard of rules or regulations. Sec. 6662(b)(1). Respondent determined that petitioner and Mr. Elesh were jointly and severally liable for the penalty for an underpayment equal to the total amount of the deficiency in each year in issue.

"Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess her proper tax liability for the year. Id.

As discussed above, the portion of the deficiencies attributable to the charitable contribution deductions are to be allocated to Mr. Elesh for purposes of section 6015(c) relief.

We accordingly find that the portion of the section 6662(a) penalties determined in connection with these deductions is likewise to be allocated to Mr. Elesh.  Sec. 6015(d)(3)(A).[8]

With respect to the portions of the penalties relating to the rental loss deductions, we find that respondent's failure to relieve petitioner from joint and several liability was not an abuse of discretion.  Petitioner made no effort to assess her proper tax liability for the years in issue, and she did not act with reasonable cause and in good faith because she failed to review the returns, which she signed.  Thus, because we would find petitioner to have been negligent with respect to the rental loss deductions outside the context of section 6015 relief, we find that respondent's failure to grant relief with respect to the penalties was not an abuse of discretion.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[8]See also sec. 1.6015-3(d)(4)(iv)(B), Income Tax Regs. ("Any accuracy-related or fraud penalties under section 6662 or 6663 are allocated to the spouse whose item generated the penalty"). See <u>supra</u> note 5 regarding the applicability of this regulation.