T.C. Summary Opinion 2008-4


UNITED STATES TAX COURT



MARY ELLEN LEPORDO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12911-06S.                    Filed January 7, 2008.



Mary Ellen Lepordo, pro se.

<u>Louise R. Forbes</u>, for respondent.



DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect when the petition was filed.  Pursuant to section 7463(b),

the decision to be entered is not reviewable by any other court,

and this opinion shall not be treated as precedent for any other

case.  Unless otherwise indicated, subsequent section references

are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from requests for innocent spouse relief under section 6015(f) with respect to petitioner's tax liabilities for 1996 and 1998 through 2002. No notices of deficiency were issued except for 2000.[1] Petitioner filed Forms 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), seeking equitable relief under section 6015(f) for each year. Respondent determined that petitioner was not entitled to relief under section 6015(f) for 1996, 1998, 1999, 2001, and 2002. With respect to 2000, petitioner requested relief of $3,971.88; respondent granted partial relief of $3,267 under section 6015(c) but found petitioner liable for $704.88.[2] The issues for decision are whether respondent: (1) Correctly denied relief as to the $704.88 under section 6015(c) for 2000; and (2) abused his discretion when he denied petitioner's request for innocent spouse relief for 1996 and 1998 through 2002 under section 6015(f).

---

[1] Petitioner and Mr. Lepordo did not file a petition with the Court, and respondent assessed the $17,701 deficiency.

[2] Respondent represents that he determined that petitioner did not have knowledge of Mr. Lepordo's gambling income and pension distributions in 2000.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition was filed, petitioner resided in Somerville, Massachusetts.

Petitioner is a high school graduate who was employed in clerical positions during the years at issue. Petitioner and Joseph J. Lepordo filed a joint Form 1040, U.S. Individual Income Tax Return, for each of the years at issue. The Federal income tax returns for 1996 and 1999 showed tax due in excess of the remittances. For 1998, 2001, and 2002, the Federal income tax returns were filed without remittances for the tax reported. With respect to 2000, respondent determined a $17,701 deficiency in the notice of deficiency mailed to petitioner and Mr. Lepordo on August 9, 2002. The deficiency was assessed when they failed to file a petition with the Court. The taxable years and the tax due for each year are summarized as follows:

| Year | Tax before credits |
|------|--------------------|
| 1996 | $8,598 |
| 1998 | 14,508 |
| 1999 | 13,871 |
| 2000 | 17,701 |
| 2001 | 18,089 |
| 2002 | 15,484 |

On April 21, 2003, the Internal Revenue Service (IRS) issued to petitioner and Mr. Lepordo a notice of intent to levy with respect to 1996. On September 9, 2003, petitioner and Mr.

Lepordo submitted an offer-in-compromise that was rejected on February 9, 2004. Mr. Lepordo subsequently passed away on February 24, 2004. Thereafter, petitioner submitted an offer-in-compromise for $1,500 that was rejected on March 25, 2005. Apparently, petitioner's second offer-in-compromise for $5,060 was never received, and the IRS cannot find its related paperwork.

After petitioner's offers-in-compromise were rejected or went unanswered, petitioner's deceased spouse's tax preparer advised her to seek innocent spouse relief. Petitioner filed Forms 8857 on May 18, 2005, seeking equitable relief under section 6015(f) for 1996 and 1998 through 2002.

On October 12, 2005, respondent issued his preliminary determinations. Respondent denied relief for 1996 because petitioner's request for relief was untimely since it was received more than 2 years after the first collection activity. The first collection activity, a notice of intent to levy, occurred April 21, 2003, and petitioner's request was received on May 18, 2005. Respondent denied petitioner's requests for the years 1998, 2001, and 2002 because she did not satisfy the criteria for relief. Evidently, the preliminary determination(s) for 1999 and 2000, which also cannot be found, denied relief for 1999 and 2000 for the same reasons.

Petitioner appealed the preliminary determinations by submitting Forms 12509, Statement of Disagreement. On April 6, 2006, the Appeals Office, without any further explanation, issued a final determination that sustained the preliminary determinations with respect to 1996, 1998, 1999, 2001, and 2002. The final determination granted partial relief of $3,267 under section 6015(c) with respect to 2000 but found petitioner liable for $704.88. Thereafter, petitioner timely filed a petition for redetermination with the Court.

## Discussion

### Burden of Proof

Except as otherwise provided in section 6015, petitioner bears the burden of proof with respect to her entitlement to innocent spouse relief. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

### Joint and Several Liability and Section 6015 Relief

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several. See also sec. 1.6013-4(b), Income Tax Regs. But the IRS may relieve a taxpayer from joint and several liability under section 6015 in certain circumstances.

Section 6015(c):  Relief for Taxpayers No Longer Married, Legally
Separated, or Not Living Together

Although petitioner stated in her request for relief that
she was seeking relief under section 6015(f) with respect to an
underpayment for each year, respondent's final determination
granted partial relief of $3,267 with respect to the 2000
deficiency under section 6015(c) and found petitioner liable for
$704.88.  Accordingly, the Court reviews respondent's
determination pursuant to section 6015(c).

Section 6015(c)(1) provides proportionate relief for any
deficiency that was assessed if a joint return was filed and, at
the time the election was made, the spouses were no longer
married, they were legally separated, or they had lived apart for
the 12-month period ending on the date the election was filed.

Generally, the individual may elect to be treated as if
separate returns were filed, and liability is limited to that
portion of the deficiency that is properly allocable to the
electing spouse.  See sec. 6015(c)(1), (d)(3).  The electing
spouse bears the burden of proving the amount of the deficiency
that is allocable to him except in limited circumstances.  Sec.
6015(c)(2).  If the IRS proves that the electing spouse had
actual knowledge, at the time he signed the return, of any item
giving rise to the deficiency and the item was allocable to the
nonelecting spouse, then the election is invalid with respect to

the portion of the deficiency that is attributable to the item. See sec. 6015(c)(3)(C); sec. 1.6015-3(c)(2), Income Tax Regs.[3]

The knowledge standard for purposes of section 6015(c)(3)(C) is an actual and clear awareness of the existence of the item giving rise to the deficiency (or the portion thereof). See Cheshire v. Commissioner, 115 T.C. 183, 194 (2000), affd. 282 F.3d 326 (5th Cir. 2002). The knowledge standard does not require the requesting spouse to possess actual knowledge of the tax consequences arising from the item giving rise to the deficiency. See id.; see also Mitchell v. Commissioner, 292 F.3d 800, 805 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332; Hopkins v. Commissioner, 121 T.C. 73, 86 (2003).

For 2000, petitioner and Mr. Lepordo submitted to respondent a signed Form 1040 that omitted all income, deductions, and tax computations. Attached to the return was a Form W-2, Wage and Tax Statement, for Mr. Lepordo from Signature Flight Support showing wages of $59,084.24 and a Form W-2 for petitioner from Harvard Vanguard Medical Associates showing wages of $27,607.40. With their tax return and attached forms, petitioner and Mr. Lepordo enclosed a $2,713 check and a letter signed by petitioner and Mr. Lepordo, stating that a Form W-2 was missing and requesting that the IRS compute their taxes.

_____

[3] Secs. 1.6015-0 through 1.6015-9, Income Tax Regs., are applicable for all elections under sec. 6015 filed on or after July 18, 2002. Sec. 1.6015-9, Income Tax Regs.

Respondent examined petitioner's and Mr. Lepordo's 2000 Form 1040 and made three adjustments to income: (a) Total wages of $86,691 ($59,084 + $27,607); (b) $13,632 in taxable pension and annuity income received by Mr. Lepordo; and (c) $1,791 in gambling income received by Mr. Lepordo. The adjustments resulted in a net tax due of $6,758 as of the date of the notice of deficiency, consisting of the $17,701 deficiency determination, a $1,041 accuracy-related penalty under section 6662, $512 of interest due, and $12,496 of withholding credits.[4]

Respondent granted petitioner partial relief of $3,267, determining that she had no knowledge of Mr. Lepordo's gambling income and pension distributions. Respondent denied relief as to $704.88. Although it is not clear from the record, the Court assumes that respondent's denial of relief was due to a determination to allocate petitioner's salary to her and to ascribe to petitioner actual knowledge of Mr. Lepordo's salary because of the Form W-2 enclosed with the letter and the blank 2000 return. See sec. 6015(c)(2), (3)(C). To the extent that this is not so, it was petitioner's burden to establish the portion of the deficiency that was not allocable to her. See sec. 6015(c); sec. 1.6015-3(d)(3), Income Tax Regs. (stating that the electing spouse has the burden to establish the proper

---

[4] The Court assumes that the payment of $2,713 has been or will be credited to the joint liability.

allocation and that none of the other limitations apply; i.e., disqualified asset transfers).

Petitioner did not establish that the IRS's $704.88 computation was incorrect or that a more favorable calculation was appropriate. See sec. 1.6015-3(d)(4)(i) and (ii), (5), and (6), Income Tax Regs. (discussing proportionate allocation, the allocation of separate return items and their effect on the requesting spouse's liability, and alternative allocation methods). Therefore, petitioner is not entitled to relief under section 6015(c) with respect to the $704.88 for which respondent found her liable.[5] Accordingly, respondent's determination with respect to the $704.88 for 2000 under section 6015(c) is sustained.

Section 6015(f):  Equitable Relief

The IRS may relieve an individual from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer

---

[5] Whether petitioner qualifies for sec. 6015(f) relief with respect to the $704.88 is discussed below. See Hopkins v. Commissioner, 121 T.C. 73 (2003) (applying Rev. Proc. 2000-15; the taxpayer received partial relief under sec. 6015(c), and the Court went on to review the disallowed portion under sec. 6015(f)); Capehart v. Commissioner, T.C. Memo. 2004-268 (same), affd. 204 Fed. Appx. 618 (9th Cir. 2006); Rowe v. Commissioner, T.C. Memo. 2001-325 (same); cf. Baumann v. Commissioner, T.C. Memo. 2005-31 (applying Rev. Proc. 2003-61; the IRS determined that the taxpayer did not qualify for relief under sec. 6015(c) because of her actual knowledge of the item but allowed partial relief under sec. 6015(f)).

liable for any unpaid tax or deficiency and he does not qualify for relief under section 6015(b) or (c).

The Court reviews the IRS's denial of innocent spouse relief under section 6015(f) for abuse of discretion.  See Butler v. Commissioner, 114 T.C. 276, 292 (2000).  Under the abuse of discretion standard, the Court must determine whether the IRS exercised its discretion arbitrarily, capriciously, or without sound basis in fact when it denied the requested relief.  Id. The Court's review is limited, and the Court cannot substitute its judgment for that of the IRS and determine whether in the Court's opinion it would have granted relief.  See Patton v. Commissioner, 116 T.C. 206 (2001); Collectors Training Inst., Inc. v. United States, 96 AFTR 2d 2005-6522, 2005-6526, 2005-2 USTC par. 50,626, at 89,727 (N.D. Ill. 2005) (stating that an abuse of discretion "'means something more than' the court's belief that it would 'have acted differently if placed in the circumstances confronting the'" Appeals officer) (quoting Johnson v. J.B. Hunt Transp., Inc., 280 F.3d 1125, 1131 (7th Cir. 2002)).

To guide IRS employees in exercising their discretion, the Commissioner has issued revenue procedures that list the factors they should consider; the Court also uses the factors when reviewing the IRS's denial of relief.  See Washington v. Commissioner, 120 T.C. 137, 147-152 (2003); Rev. Proc. 2003-61,

2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.

<u>Rev. Proc. 2003-61, Sec. 4.01:  Seven Threshold Conditions for Relief</u>

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, begins with a list of seven threshold conditions that a taxpayer must satisfy in order to qualify for relief under section 6015(f). The Court will not recite them all.

With respect to 1996, petitioner fails the third requirement; i.e., the requesting spouse must apply for relief no later than 2 years after the date of the IRS's first collection activity after July 22, 1998.  See Rev. Proc. 2003-61, sec. 4.01(3), 2003-2 C.B. at 297; cf. sec. 1.6015-5(b)(2), Income Tax Regs. (defining the term "collection activity" to include a "section 6330 notice", which is also defined as the notice the IRS sends to taxpayers informing them of the IRS's intent to levy and their right to request a hearing).

Respondent entered into evidence a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, which shows that the IRS sent to petitioner a notice of the IRS's intent to levy and her right to request a hearing on April 21, 2003. Petitioner's Form 8857 was received by the IRS on May 18, 2005. Because the Form 8857 was received after the expiration of the 2-year period, the Court concludes that the IRS did not abuse its

discretion when it denied relief for 1996.  Accordingly, respondent's determination for 1996 is sustained.

With respect to taxable years 1998 through 2002, respondent agrees that the IRS determined that petitioner satisfied the threshold requirements of Rev. Proc. 2003-61, sec. 4.01.

Rev. Proc. 2003-61, Sec. 4.02:  Circumstances Ordinarily Qualifying for Relief

Where the requesting spouse satisfies the threshold conditions of Rev. Proc. 2003-61, sec. 4.01, Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth the circumstances in which the IRS will ordinarily grant relief under section 6015(f) with respect to the underpayment of a properly reported liability.  To qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the requesting spouse must:  (1) No longer be married to, be legally separated from, or not have been a member of the same household as the nonelecting spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when she signed the return that the nonelecting spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted.  See Rev. Proc. 2003-61, sec. 4.02(1), 2003-2 C.B. at 298.

Petitioner's husband passed away on February 24, 2004, and petitioner's request for relief was received on May 18, 2005. Condition 1 is satisfied.

The preliminary determination for 1998, 2001, and 2002 states that:  (1) Petitioner's reliance on Mr. Lepordo to take care of the tax matters did not establish a reasonable belief that the taxes would be paid at the time she signed the returns; (2) the fact that Mr. Lepordo did not have enough taxes withheld did not support relief; (3) she had knowledge of the unpaid balances when she signed the returns; (4) she did not establish that Mr. Lepordo was financially responsible; (5) she did not establish that Mr. Lepordo took responsibility for any portion of the unpaid taxes; and (6) she did not establish that Mr. Lepordo had the funds available or a specific payment plan at the time she signed the returns.  The preliminary determination(s) for 1999 and 2000 is not in the record.  The final determination merely states that the IRS was granting partial relief for 2000, but there is no explanation as to the IRS's reasons for denying relief.

Petitioner testified that she was not involved in the preparation of the returns, that she just gave her Forms W-2 to Mr. Lepordo, and his "tax guy did everything."  Petitioner also testified that she knew that partial payments were submitted for some years, while no payments were submitted in other years.  Petitioner testified further that she told Mr. Lepordo that the taxes had to be paid, but "he told me not to worry about it, that, * * * he'll take care of it."  On her Form 12510,

Questionnaire for Requesting Spouse, petitioner claimed that she was not allowed to question Mr. Lepordo or the return preparer and that she had no knowledge about how the moneys from the unpaid taxes were spent.  With respect to their financial matters, petitioner testified that she had access to their joint account, but she did not pay any bills.  However, petitioner's Form 12510 stated that "mostly my husband" wrote the checks, and if any checks were written, Mr. Lepordo had to approve them.

The Court notes, however, that with the 2000 return, petitioner signed a document that stated:  "I enclosed * * * [a $2,713 check and] any moneys left over from this check may be applied to my previous year's balance still owed."  And although the 1996 return is no longer in issue, petitioner submitted a similar handwritten statement:  "Please find enclosed a check in the amount of $499.00 towards the money we owe.  Thank you, Mary Ellen Lepordo".[6]

In view of petitioner's testimony that she knew at the time she signed the returns that their returns were submitted with either partial or no payments and of the other evidence in the record, the Court finds that she had both actual and constructive

---

[6] The Court also notes that because petitioner filed a separate return for 1997, she knew that she did not have to file a joint tax return with Mr. Lepordo.  Because the Court finds that this factor favors respondent on other grounds, the Court need not decide whether that circumstance would also weigh against relief.

knowledge at the time she signed the returns that the tax liabilities would not be paid.  Therefore, the Court finds for respondent on this element and need not discuss the third element.  Accordingly, the IRS did not abuse its discretion by denying relief under Rev. Proc. 2003-61, sec. 4.02, with respect to 1998, 1999, 2001, and 2002.

Rev. Proc. 2003-61, Sec. 4.03:  Other Factors

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the IRS may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03.  Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, contains a nonexhaustive list of factors that the IRS will consider and weigh when determining whether to grant equitable relief under section 6015(f).  The factors and the Court's analysis with respect to each factor are described below.

Marital Status

The IRS will take into consideration whether the requesting spouse is separated or divorced from the nonelecting spouse. Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.

Mr. Lepordo passed away well over a year before petitioner's request for relief.  Therefore, the Court concludes that this factor weighs in favor of relief.  See Banderas v. Commissioner, T.C. Memo. 2007-129 (finding that this factor weighed in favor of relief under similar facts).

Economic Hardship

The IRS will also take into consideration whether the requesting spouse will suffer economic hardship if the relief is not granted. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298. Generally, economic hardship exists if collection of the tax liability will cause a taxpayer to be unable to pay reasonable, basic living expenses. See Butner v. Commissioner, T.C. Memo. 2007-136. Petitioner must prove that the expenses qualify and that they are reasonable. See Monsour v. Commissioner, T.C. Memo. 2004-190.

At trial, petitioner testified that she cannot afford to pay the liabilities. Petitioner's Form 12510 shows that her monthly expenses ($2,860) exceed her net wages ($2,344) by $516. Petitioner's Forms 12509 state that her current income barely allows her to stay ahead of her bills, and because of increases in rent and utilities, it will be "very difficult if not impossible to meet the IRS demands." In a document attached to her Form 12510, petitioner stated: "I cannot take on this burden myself and I am trying to figure out how I'm going to make it with just one income".

To the extent that there are determination letters in the record, the letters fail to set forth the IRS's conclusions with respect to this factor. Respondent did not raise any issue as to this factor at trial.

The Court finds, however, that petitioner has not met her burden.  Petitioner did not introduce into evidence her financial records; i.e., current salary, living expenses, and amounts of other debts, which are necessary to support her claim that she will be unable to pay reasonable, basic living expenses if relief is not granted.  Substantiation was particularly necessary in view of petitioner's assertion that her expenses exceeded her income as well as the large amount of expenses claimed (i.e., $1,025 for food and $600 for utilities).  Moreover, petitioner remains gainfully employed and has only one child whom she "helps attend school."  Therefore, this factor weighs against relief.  See Banderas v. Commissioner, supra (stating that lack of economic hardship weighs against relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (stating same under Rev. Proc. 2000-15).

Knowledge or Reason To Know:  A Properly Reported but Not Paid Liability

The IRS will also consider whether the requesting spouse did not know or had no reason to know that the nonelecting spouse would not pay the liability.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298.  In the case of a properly reported but unpaid liability, the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid.  See Washington v. Commissioner, 120 T.C. at 151; see also Feldman v. Commissioner,

T.C. Memo. 2003-201, affd. 152 Fed. Appx. 622 (9th Cir. 2005).

Petitioner must establish that: (1) At the time she signed the return for each of the years at issue, she had no knowledge or reason to know that the tax reported on each return would not be paid; and (2) it was reasonable for her to believe that Mr. Lepordo would pay the tax reported on each return. See Ogonoski v. Commissioner, T.C. Memo. 2004-52; Collier v. Commissioner, T.C. Memo. 2002-144.

The Court has found for respondent on this factor. Therefore, this factor weighs against relief. See Beatty v. Commissioner, T.C. Memo. 2007-167 (applying Rev. Proc. 2003-61 and finding that knowledge or reason to know weighs against relief); Fox v. Commissioner, T.C. Memo. 2006-22 (same); cf. Levy v. Commissioner, T.C. Memo. 2005-92 (applying Rev. Proc. 2000-15 and stating that lack of knowledge weighs in favor of relief while knowledge or reason to know weighs against relief).

Knowledge or Reason To Know:  Items Giving Rise to the $704.88 Portion of the Deficiency

With respect to a liability that arises from a deficiency, the IRS will consider whether the requesting spouse did not know or had no reason to know of the items giving rise to the deficiency. Rev. Proc. 2003-61, sec 4.03(2)(a)(iii)(B), 2003-2 C.B. at 298. If the electing spouse had actual knowledge of the item giving rise to the deficiency, then that knowledge is a strong factor weighing against relief. See id.

To the extent that the $704.88 portion of the deficiency consists of the income Mr. Lepordo received from Signature Flight Support, the Court finds that petitioner had actual knowledge of the item since she knew of his employment relationship therewith, the amount of the income, and his receipt of the income on account of the Form W-2 enclosed with their 2000 return.  See Cheshire v. Commissioner, 115 T.C. at 194 (finding that the taxpayer had actual knowledge because she knew about the nature of the income, the amount, and her spouse's receipt thereof); Mitchell v. Commissioner, T.C. Memo. 2000-332 (stating same).  To the extent that the $704.88 portion of the deficiency consists of other items, petitioner failed to show that she had no knowledge or reason to know of the items giving rise to the deficiency.  Accordingly, this factor weighs against relief.

Nonelecting Spouse's Legal Obligation

The IRS will also consider whether the nonelecting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298.  But if the requesting spouse knew or had reason to know at the time the agreement was entered into that the liability would not be paid by the nonelecting spouse, then this factor will not weigh in favor of relief.  Id.

There is no evidence of a divorce decree or agreement in the record showing that the unpaid taxes were the legal obligation of Mr. Lepordo. Therefore, this factor is neutral. See <u>Magee v. Commissioner</u>, T.C. Memo. 2005-263 (applying Rev. Proc. 2003-61); cf. <u>Butner v. Commissioner</u>, T.C. Memo. 2007-136 (applying Rev. Proc. 2000-15).

<u>Significant Benefit</u>

The IRS will consider whether the requesting spouse received significant benefit beyond normal support as a result of the unpaid tax liability or the item giving rise to the deficiency. Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.

Respondent represents that there is no indication that petitioner received any significant benefit beyond normal support because of the unpaid tax liabilities or the item giving rise to the deficiency. In the preliminary determination denying relief for 1998, 2001, and 2002, no issue was raised as to whether petitioner had received any significant benefit. The final determination fails to make a conclusion as to this factor, and the preliminary determination(s) for 1999 and 2000 is not in the record. Additionally, there is no evidence in the record indicating that petitioner received significant benefit as a result of the unpaid tax.

Therefore, the Court concludes that this factor weighs in favor of relief. See <u>Magee v. Commissioner</u>, <u>supra</u> (stating that

lack of significant benefit weighed in favor of relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (stating that lack of significant benefit weighed in favor of relief under former section 6013(e) notwithstanding that Rev. Proc. 2000-15 stated that it was neutral); Ferrarese v. Commissioner, T.C. Memo. 2002-249.

Compliance With Federal Tax Laws

The IRS will take into consideration whether the requesting spouse has made a good faith effort to comply with the Federal tax laws in the succeeding years. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.

Respondent agrees that petitioner has complied with the Federal tax laws since her husband's death. Therefore, this factor weighs in favor of relief. See Fox v. Commissioner, supra (stating that noncompliance weighs against relief under Rev. Proc. 2003-61); see also Beatty v. Commissioner, supra (stating that one delinquently filed return, which showed a refund due, and the other facts and circumstances were not significant factors weighing against relief in that case, and the Commissioner argued that the compliance factor weighed in favor of relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (stating that noncompliance weighs against relief under Rev. Proc. 2000-15).

Abuse

The IRS will also consider whether the nonelecting spouse abused the electing spouse. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299. The presence of abuse is a factor favoring relief, and a history of abuse may mitigate the electing spouse's knowledge or reason to know. Id.

With respect to the abuse factor, on Form 12510 petitioner merely stated: "If Controlling is Abuse, then yes", but on Forms 12509, petitioner contended that her deceased husband inflicted abuse on her and was "very controlling." At trial, however, she testified that she was not physically abused.

The preliminary determination for 1998, 2001, and 2002 only states that "Documentation was not provided to consider an abusive situation or duress." The preliminary determination(s) for 1999 and 2000 is not in the record. The final determination merely states that it was sustaining the denial and granting partial relief for 2000, but there is no explanation whatsoever as to the IRS's reasons for denying relief.

Petitioner's claim of abuse is merely conclusory: she points to no specific incidents or threats at or near the time she signed the return. See In re Hinckley, 256 Bankr. 814 (Bankr. M.D. Fla. 2000). Additionally, petitioner's testimony at trial contradicts the allegations of abuse on her Forms 12509.

On the other hand, the IRS's administrative record with respect to the abuse factor is scant at best.

Because of the lack of sufficient evidence of abuse in the record, as well as the Court's concern that Mr. Lepordo is not available to defend himself against the abuse allegations or to otherwise verify them, the Court finds that the abuse factor is neutral.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i) (stating that the presence of abuse weighs in favor of relief while lack of abuse does not weigh against relief); see also Magee v. Commissioner, T.C. Memo. 2005-263 (stating that lack of abuse is a neutral factor under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (stating same under Rev. Proc. 2000-15). Additionally, the Court finds that because of the lack of evidence of abuse in the record, this factor does not mitigate petitioner's knowledge or reason to know.

Mental or Physical Health

The IRS will take into consideration whether the electing spouse was in poor mental or physical health on the date the electing spouse signed the return or at the time relief was requested.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

There is no evidence in the record that petitioner's mental or physical health was poor; therefore, this is a neutral factor. See id.; see also Magee v. Commissioner, supra.

Conclusion:  Weight of the Factors

Although the decision is close, the Court concludes that the Appeals officer did not act arbitrarily, capriciously, or without sound basis in fact, nor is there anything "fundamentally wrong" with the IRS's determination.  See Johnson v. J.B. Hunt Transp., Inc., 280 F.3d at 1131.  Consequently, the Court concludes that respondent's denial of relief with respect to 1998 through 2002 was not an abuse of discretion and that it would not be inequitable to hold petitioner liable for the unpaid taxes and the $704.88 portion of the deficiency with respect to 2000.

To reflect the foregoing,

Decision will be entered for respondent.